(70 App. Div. 569.)

WOLFF v. LOCKWOOD et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. STOCKBROKERS—UNAUTHORIZED PURCHASES — RATIFICATION BY CUSTOMER—
EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* insufficient to show ratification by customer of unauthorized purchases of stock made by brokers in good faith on his account, the broker's agent having, without the knowledge of either party, sent in fictitious orders in the customer's name; and therefore that the customer's actual account was sufficiently margined to prevent arbitrary sale, though, had the purchases in question been authorized, the margin would have been insufficient; and the customer was accordingly entitled to recover damages for any loss caused to him by such a sale.

2. SAME—ARBITRARY SALE BY BROKER—ACTION FOR DAMAGES BY CUSTOMER—
SET-OFF.

Where a customer of stockbrokers had a speculative account with them standing in his own name, but in which he and two other parties, one of them an agent of the brokers, were interested, the brokers were entitled to regard all three as partners in the transaction, and the customer was therefore individually liable for the entire balance due the brokers on the account; and such balance could be set off by them in an action by the customer against them for damages caused by their arbitrarily closing out another account in which he alone was interested.

Appeal from judgment on report of referee.

Action by Henry A. Wolff against Henry B. Lockwood and others. From a judgment dismissing the complaint and allowing a recovery on a counterclaim, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Lewis H. Freedman, for appellant.
Edwin C. Ward, for respondents.

PATTERSON, J. The judgment from which this appeal is taken was entered upon the report of a referee in favor of the defendants dismissing the complaint and allowing a recovery upon a counterclaim. The transactions between the plaintiff and the defendants out of which their respective demands arose consisted of dealings in stocks. The plaintiff's claim is based upon allegations that the defendants, as brokers, were employed by him to buy and sell shares on his account; that there were two accounts with the defendants standing in his name, known respectively as accounts No. 1 and No. 2; that on account No. 1 no transactions were had after February 7, 1898; and he claims further that on account No. 2 a balance apparently due from him to the defendants was paid by the check of a third party. The claim of the defendants is, in substance, that the transactions of the plaintiff with him extended beyond February 7, 1898, and included items of stock, the purchase of which on the plaintiff's account is now repudiated by him. The determination of the issues arising upon the transactions contained in account No. 1 depends upon the authority of the defendants to charge the plaintiff with certain alleged purchases made by them on his behalf. All the stocks bought or held by the defend-

ants for the plaintiff were carried on margins. The referee found that on the 14th day of February, 1898, the defendants were carrying on the plaintiff's account 1,600 shares of stock on which the margins had become exhausted; that the defendants made due and reasonable efforts to advise the plaintiff of the condition of his account, and to secure further margin from him; that they failed to receive further margin, and sold out the account on the 15th day of February at a loss. The plaintiff's contention is that on the 7th of February, 1898, the defendants were carrying for him only 1,000 shares of stock; that he ceased dealing with them on his account No. 1 at that time, and that he never gave any orders to buy stock on his account after that date; and that the sale of his stocks on the 15th of February was unauthorized. If the defendants, by authority of the plaintiff, bought shares on margin for him after the 7th of February, and in excess of the 1,000 shares carried for him on that date, or if the plaintiff ratified purchases of shares made by the defendants on his account after the 7th of February, and without excuse failed to respond to calls for margin after being duly advised, then the plaintiff was not entitled to recover. All the transactions had by the plaintiff with the defendants were by orders given through one Ranger. The referee has found that Ranger was an employé of the defendants, whose business it was to solicit accounts for the firm, and that he received a salary for so doing; that while in such employment Ranger secured the account of the plaintiff for the defendants, and plaintiff authorized a number of transactions on said account, giving his orders through Ranger, who, in addition to those authorized, sent other orders to buy and sell stocks on account of the plaintiff, and of which the plaintiff was ignorant. But the referee also found that those transactions were executed in good faith by the defendants, who did not know, and had no reason to know, that they were unauthorized. The evidence fully sustains the contention that through all those transactions Ranger was the agent of the defendants, and not of the plaintiff. The dealings of the plaintiff with Ranger as the representative of the defendants must stand, respecting account No. 1, upon the same footing as to their liability as if the plaintiff had dealt directly with the defendants. The shares with which he is sought to be charged by the defendants over and above the 1,000 which they were carrying can be no other than the 600, the purchase of which on his account the plaintiff disclaims. The referee has found that the plaintiff must bear the loss arising from the purchase and sale of these 600 shares because of his neglect in the transactions, and because the defendants themselves were free from negligence; and this conclusion requires an examination of the evidence to ascertain what was the situation and what were the acts of the parties concerning the account No. 1.

Eliminating from that account those 600 shares, we find that on the 15th of February, 1898,—the day upon which the stock was sold,—there was a margin upon 1,000 shares of $1,770; and the referee very properly states in his opinion that, if the plaintiff's contention is correct, his account was sufficiently margined to protect it from an arbitrary sale, while, if the defendants' contention is correct, they were unquestionably justified in selling out the ac-

count, provided they had performed their obligation in giving notice. We are unable to gather from all the evidence a satisfactory reason why, as an original proposition, the plaintiff should be charged with the fraud of Ranger upon his principals, or with the consequences of the imposition he practiced upon them. It is conceded that he had no direct transactions with the defendants. Ranger was employed by them to solicit and take orders from customers. The defendants put Ranger in the position which enabled him to deceive them, and, as his agency was solely for them, it is apparent that, if no other element is introduced in the case, those who were invited by the defendants to deal with him on their account should not be made to suffer for his transgressions. Good faith or honesty of purpose on the part of the defendants in buying these stocks and charging them to the plaintiff does not affect the question. The defendants may have believed that the plaintiff had ordered the purchase of the additional shares, but that would give them no right unless the plaintiff did something to confirm that belief, or acted in such a way as to justify it, and to subject them to some loss in consequence of such acts of confirmation. The defendants contend that such was the case. They claim that accounts were furnished from day to day to the plaintiff of the transactions he now repudiates; that the ordinary notifications were sent to him at the address given by him; that he paid no attention to those notices, and that, therefore, they were justified in believing that the orders for the purchase emanated from him, and that they were thus prevented from taking such steps as would have been appropriate to save themselves from loss had they been notified that Ranger had no authority to give the orders for these repudiated purchases. The course of dealings established between the parties was the following: The account (referring now to account No. 1) was originally opened at the solicitation of Ranger, and by a transfer to the defendants of an account which the plaintiff had had with another firm of brokers. The defendants conducted their business at their office at 44 and 46 Broadway, in the city of New York. Ranger, their agent, transacted his business at the Waldorf-Astoria Hotel, in the city of New York. Orders were given to him by the plaintiff, and were then transmitted by telephone to the defendants' principal office on Broadway, and the orders were then executed in the customary way. On the day on which each order was executed, a memorandum showing the transaction was sent in the usual way to the customer. The plaintiff had stated that his address was the Reform Club, in the city of New York. There is no reason to doubt that on each occasion on which an order was given by Ranger for the account of the plaintiff, whether such order were genuine or spurious, the usual notification was sent to the Reform Club. The plaintiff swears that he received no such notices. The evidence upon this subject is in such a condition that we are unable to hold that the plaintiff was bound to these unauthorized purchases by reason of inattention to those notices. But the contention of the defendants is further to the effect that on the 14th day of February—the day before they closed the plaintiff's account—they sent to him notices,

the delivery of which at the Reform Club is proven, that the margins upon his account were exhausted, and in that notice it was specifically mentioned that they were carrying for him 1,600 shares of stock. That notice is in the following words:

"At the closing prices your account is short, and during the day we have endeavored to communicate without success. Will you kindly send us $1,000 at least by the opening to-morrow to protect your stock, and another $1,000 as additional margin if you wish to carry them. You are long 800 shares Penna., 300 Northern Pac Pf., Union Pacific Pfd., and 200 B. & O. S. W. Pfd."

The reference is undoubtedly to 300 shares each of ·Northern Pacific and Union Pacific stock. The plaintiff swears that he never received this notice, but, at all events, on the 15th of February the defendants sold out the plaintiff's account, and they again sent by special messenger a notification to the plaintiff, who again swears he never received it, although this notice, as well as the one the day before, was proved to have been delivered by a special messenger at the Reform Club. All this might have been satisfactory evidence to bind the plaintiff to an account by which he was charged with the 1,600 shares, and which would have been sufficient as a notification to him that his margins were exhausted, and his stock would be sold unless margin was kept up, if the inference could fairly be drawn that the plaintiff actually received those notices, and there were nothing further in the case to show that he was not concluded by them and their contents. On the 15th day of February—the day on which the account was closed—the plaintiff had a conversation over the telephone with a Mr. Kelly, one of the defendants, and he asked for Ranger. That communication was opened by the plaintiff in consequence of a letter he received that day from Ranger, asking him to call him up personally at the office of the defendants in Broadway. Ranger was not there, but Kelly informed the plaintiff that his stocks had been sold. The plaintiff swears that he understood that as referring to certain stocks which the defendants were carrying for him, and which he had authorized or directed to be sold at a fixed price, and he did not regard that communication as referring to the whole account. On the evening of that day the plaintiff saw Ranger, who requested him to call next day. On the 16th the plaintiff had a conversation with Ranger at the Waldorf-Astoria Hotel, and there they figured up the margin which was in the defendants' hands on the plaintiff's account, and it was found to be about $1,600. Ranger then assured the plaintiff that his stocks were secure, but asked for additional margin, and received it in the shape of a draft or check drawn upon London for £200 sterling. On the same day the plaintiff left the city of New York for Boston, where he remained for some days, and on returning found that his whole account had been closed and his stock sold on the 15th.

We are of the opinion upon all these facts, which are, in the main, uncontradicted, that the plaintiff might safely rest upon the conviction that in dealing with Ranger he was entitled to regard him, if not as one of the defendants, then (as he was in fact) the representative and agent of the defendants in all the transactions concerning account No.

1, and that all that Ranger did with the plaintiff was binding upon the defendants. We think that the defendants closed the account and sold the plaintiff's stock without right on the 15th of February; that the plaintiff is not precluded by the notices claimed to have been sent to him; and that on the 16th (although the day after the sale), when the communication was made by Ranger that the plaintiff had sufficient margin' for the time being, and additional margin was put up, the plaintiff was entitled to believe that his stocks were secure, and his account protected. On the 16th the defendants, through their agent, were dealing with the plaintiff with reference to a then existing account, and the plaintiff is not estopped from insisting that the sale on the 15th was unauthorized, and he is not bound to an admission that the defendants were carrying for him the 600 additional shares which they claimed to have bought on his account. On all the evidence as to this account No. 1, our conclusions are: First, that the defendants were not authorized to buy the 600 shares with which they seek to charge the plaintiff; second, that the plaintiff's account on the 15th of February consisted of the 1,000 shares, upon which on that day there was sufficient margin; third, that, although the defendants may honestly have believed that they were carrying 1,600 shares for him on that day, and sent a notice containing a statement that they held that number of shares, and that the margin was exhausted, nevertheless the plaintiff was not bound by such notice, he having on the same day made the effort to see the defendants' agent concerning the matter, and on the next day having seen their agent (with whom the transactions were had), and agreed with him that the margin was sufficient to carry his stock, and he having given to such agent a check for an additional sum as margin. We think, therefore, on this account No. 1, that the plaintiff is entitled to recover from the defendants whatever loss he sustained by reason of their closing it out, the measure of damages being the difference between the price at which they sold his 1,000 shares and the highest price which shares of a similar character brought in the market within a reasonable time after the 15th of February. Concerning account No. 2, the finding of the referee is correct. That was a speculative account, carried in the name of the plaintiff, but in which he, Ranger, and one Bowles were jointly interested. Whatever may have been the relations existing between these three parties was a matter of no consequence to the defendants, in the absence of knowledge on their part of the fact that this was other than just such an account as it purported to be, namely, one for which the plaintiff is individually responsible. The defendants may look to him for liability on that account, and no fair contest can be made as to the fact that the defendants were entitled to close that account as they did. A balance was due on it to them. For a portion of that balance Bowles gave a check through Ranger; but that did not satisfy the whole indebtedness, nor was it received by the defendants in extinguishment of that whole indebtedness. Bowles and Ranger were interested with the plaintiff in this account No. 2, and the plaintiff was properly held liable for all of the balance of that account except the amount that had been paid by the check of Bowles given to Ranger. It cannot be said that Ranger was the agent of the de-

fendants with respect to this account No. 2, for by the arrangement between the plaintiff and Bowles and Ranger those three were engaged in transactions in the very nature of which Ranger could not have been the agent of the defendants, but was, in effect, a partner with the plaintiff, and the defendants are entitled to avail themselves of the real nature of the transactions. The plaintiff is therefore liable for the balance, and the amount of it is a proper offset to any recovery to which the plaintiff might be entitled on account No. 1.

The foregoing considerations lead to a reversal of the judgment, and a direction that a new trial be had before another referee, with costs to appellant to abide the event. All concur.