## (April 18, 1966)

■ SANDRA BAKER, Appellant, v. CITY OF NEW YORK, Respondent, et al., Defendant.— In an action to recover damages for personal injuries allegedly suffered through, in part, the negligence of defendant the City of New York, plaintiff appeals from a judgment of the Supreme Court, Kings County,

entered November 6, 1964, in favor of said defendant upon the court's dismissal of the complaint at the end of the plaintiff's case upon a jury trial. (As against defendant Herman Baker, the action was discontinued.) Judgment reversed on the law and new trial granted, with costs to abide the event. No questions of fact have been considered. Plaintiff, the wife of a police officer (defendant Baker) employed by the defendant city, was shot and seriously injured by her husband in the waiting room of the former Domestic Relations Court of the City of New York on November 2, 1955. Plaintiff and her husband were estranged. An order of protection of the Domestic Relations Court (which had been made on July 14, 1955), had directed the husband "not to strike, molest, threaten or annoy" the plaintiff. Moreover, that court had given plaintiff a certificate of the issuance of the order, which certificate provided that, upon its presentation by plaintiff to any peace officer, the latter would be authorized to arrest the husband for violation of the terms of the order and to aid plaintiff. The husband at the time (and since Dec. 30, 1952) had been deprived by the Police Department of his right to own or possess a service revolver and had been assigned to limited duty. Sometime prior to December 30, 1952, the husband had been examined by a psychiatrist at the request of the Presiding Justice of the Domestic Relations Court. The psychiatrist found that the husband suffered from a "personality disorder, schizoid trends" and testified that "this man was an unstable man in my eyes and because of his assignment, that perhaps he could be placed in a situation where even if there were an outburst, there would be a minimal destructiveness, not self-destructiveness, more overt, outward destructiveness." There was evidence that sometime in October, 1955 the husband had created a disturbance at the family home, that a police officer summoned by plaintiff investigated and refused to take action against the husband, even though the certificate of the order of protection was shown to him by plaintiff, saying that the certificate was "no good" and "only a piece of paper." These events were narrated to Thomas Painter, a probation officer attached to the Domestic Relations Court. On the day of the shooting plaintiff went to see Painter, who told her that her husband was ill and could not come to court. While making a telephone call in the corridor, plaintiff observed her husband entering the building and told Painter that her husband was present. She asked Painter whether she could not wait in his office, saying that she was "afraid to stand in the room with him." Painter told her, instead, to go to the waiting room. Although police officers and attendants were assigned to the court, none of them were in the waiting room then or up to 15 to 20 minutes thereafter, when the shooting took place. In our opinion, plaintiff's proof made out a prima facie case. A municipality may not be held liable for failure to provide general police protection (*Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845), but there may be liability if there exists on the part of the municipality "some relationship * * * creating a duty to use due care for the benefit of particular persons or classes of persons" (*Motyka* v. *City of Amsterdam*, 15 N Y 2d 134, 139; cf. *Schuster* v. *City of New York*, 5 N Y 2d 75, 80–81; *Farmer* v. *City of New York*, 23 A D 2d 638). Plaintiff, we think, was a person recognized by the order of protection as one to whom a special duty was owed. The order of protection was issued by the court pursuant to statute (former Domestic Relations Ct. Act, § 92, subd. [7]); and the certificate with which plaitiff was furnished constituted authority to a peace officer, when presented by the plaintiff, to arrest the husband when charged with a violation of the terms of the order (former Domestic Relations Ct. Act, § 126). The order of protection, though a relatively new inven-

tion in the law (note, 25 Albany L. Rev. 172), was intended both as a remedial and preventive arm of the former Domestic Relations Court (Use of Protection Orders in Family Court Disputes, 2 Columbia Journal of Law and Social Problems, No. 3, p. 1). Plaintiff was thus singled out by judicial process as a person in need of special protection and peace officers had a duty to supply protection to her. Painter was a peace officer (former Domestic Relations Ct. Act, § 25). It is consequently a question of fact for the jury whether Painter, during the incidents of November 2, 1955, or the police officer to whom plaintiff had turned during the previous episode in October when the husband was causing a disturbance were negligent in discharging the duty of special protection to plaintiff (cf. *Middleton* v. *Whitridge*, 213 N. Y. 499, 510-511; *Scarff* v. *Metcalf*, 107 N. Y. 211, 215; *Dunham* v. *Village of Canisteo*, 303 N. Y. 498). We think, too, that plaintiff established a prima facie case under the theory that the defendant city, in retaining the husband as a police officer under the circumstances, was guilty of negligence (*McCrink* v. *City of New York*, 296 N. Y. 99; *Benway* v. *City of Watertown*, 1 A D 2d 465). Although the defendant city required the husband to surrender his service revolver, it did not divest him of his capacity as a peace officer to own and possess a revolver, exempt from the necessity of a license therefor (Penal Law, former § 1897, subd. 13, as in effect in 1955). Plaintiff's proof does not show the manner in which the husband obtained the weapon which he used in firing the shots, but in the interest of justice plaintiff should be granted an opportunity to demonstrate that any violation of defendant city's duty resulted in the happening of the injury. Under either theory of liability, the question of proximate cause is a matter for the jury (*Lubelfeld* v. *City of New York*, 4 N Y 2d 455, 460; *McCrink* v. *City of New York, supra*, p. 106). For these reasons, a new trial is granted. Brennan, Acting P. J., Hill, Hopkins and Benjamin, JJ., concur; Rabin, J., dissents and votes to affirm the judgment, with the following memorandum: In my opinion, the circumstances relied upon in the majority decision do not spell out liability on defendant city's part: (a) The police officer's alleged failure to adhere to plaintiff's request in October, 1955 to effectuate the order of protection at plaintiff's home was not the proximate cause of plaintiff's injury on November 2, 1955, in the premises of the former Domestic Relations Court. The evidentiary value of this piece of information was not heightened by its later disclosure to Painter. (b) On November 2, 1955, neither Painter's alleged failure to safeguard plaintiff nor the lack of police officers and attendants was the proximate cause of plaintiff's injury. Painter was merely informed that plaintiff was "afraid" of remaining in proximity to her husband, not that the husband was currently manifesting such vicious propensities as indicated that he was likely to assault plaintiff and to disregard his training as a peace officer by perpetration of criminal acts. Even assuming that the husband had previously misbehaved, there is no presumption that he was likely to repeat his prior offense. In addition, there was no proof that any of the police officers or attendants had been informed of any unseemly deportment on the husband's part. (c) There is no basis for the proposition that the order of protection served to convert the defendant city's duty to provide general police protection into a special obligation to use extraordinary measures for safeguarding plaintiff. The statute, pursuant to which the order of protection was issued (former Domestic Relations Ct. Act, § 92, subd. [7]) and the procedural section which now provides for enforcement thereof, in apparent conformity with previous practice, plainly contemplate that such order constitutes authorization to any peace officer "to take into custody a person

charged with violating the terms of such order of protection and bring such person before the court" (Family Ct. Act, § 168). The implication seems clear that the person taken into custody shall be one who has already disobeyed the mandate of the tribunal which issued the order — not one who is about to disobey such order. If the latter meaning were to be ascribed, there would be endless need for peace officers to assume the role of seers to decide — in advance of overt act — whether a violation of an order of protection was about to occur and to embroil the city in litigation of unforeseeable dimensions on claims of false arrest. Closely read, it will be observed that the enabling statute for granting an order of protection covered only the conduct of spouses with reference to deportment at the matrimonial home or the establishments of spouses already separated (former Domestic Relations Ct. Act, § 92, subd. [7]), and did not cover conduct in public places, as at bar. For misbehavior in the latter areas, the provisions of the Penal Law would seem adequate protection for all citizens. While, as the majority has noted, an order of protection may be sociologically deemed "a remedial and preventive arm of the former Domestic Relations Court," there is nothing in the statute which created such remedy that made any particular peace officer or the municipality which he served the insurer of the safety of the person for whose benefit such an order was issued. (d) As to the husband's use of a gun, there is proof that the Police Department did bar plaintiff's husband from the further use of his service gun, but there is no proof that the Police Department (his employer) knew or should have known that he had acquired another gun, either legally and as a peace officer who needed no license, or illegally, by theft or otherwise. In *McCrink* v. *City of New York* (296 N. Y. 99, 105) the defendant city was held liable because its off-duty patrolman had not been deprived of his weapon, despite a departmental record of misconduct, and in fact had remained under the departmental requirement to carry his gun 24 hours a day "on or off duty." In *Benway* v. *City of Watertown* (1 A D 2d 465, 467) the defendant municipality, under the authority of *McCrink*, was held liable for knowingly returning a revolver to one who had "no permit or license therefor." The facts at bar fall neither within the pattern of *McCrink* nor of *Benway*; and therefore those cases have no application herein. (e) By reason of the foregoing deficiencies in plaintiff's case, I see no reason why "in the interests of justice" she should be granted another opportunity to establish that defendant city's violation of some duty resulted in her injury. I presume that, upon the trial already had, plaintiff presented all the proof she was able to muster.