Abraham J. Gellinoff, J.
For too long, Anglo-American law treated a man’s physical abuse of his wife as different from any other assault, and, indeed, as an acceptable practice (see, Bacon, Baron and Feme, p 9 [2d ed, 1719]; 1 Blackstone’s Comm [7th ed, 1775], pp 444-445); In re Cochrane, 8 Dowl Rep 630, 633-634 [1840]; People v Winters, 2 Parker Cr Rep 10 [1823]). If the allegations of the instant complaint — buttressed by hundreds of pages of affidavits — are true, only the written law has changed; in reality, wife beating is still condoned, if not approved, by some of those charged with protecting its victims.
The complaint, supported by sworn statements in dozens of actual cases, alleges that police officers called to the scene of a husband’s assault on his wife, uniformly refuse to take action, even if the physical evidence of the assault is unmistakable and undenied; that, instead, they inform the battered wife that they are unable to render assistance or make an arrest, solely because the victim is the wife of her assailant; and that they advise her that her only remedy is to obtain an order of protection from the Family Court.
The complaint further asserts — similarly supported by sworn statements in dozens of actual cases — that the Probation Department employees in charge of the information desks and intake interviews at the various Family Courts fail to advise pro se battered wives seeking orders of protection of their right to an immediate petition for such orders. Instead, the complaint alleges, they merely assign conference dates to the petitioning wives — often weeks or months later — despite their pleas for immediate relief, without advising that such conferences are voluntary, and not a prerequisite for the obtaining of an order of protection.
The complaint finally alleges, in essence, that the Family Court petition clerks have, upon several occasions, denied petitioning wives timely access to the sitting Judge, and have abused their discretion in determining whether the wives’ complaints are sufficient to warrant preparation of a petition.
Based upon these allegations, the complaint seeks various forms of declaratory and injunctive relief against the respective defendants.
In the motions now before the court, the various defendants *1049 seek summary judgment dismissing the complaint. By separate motion, plaintiffs seek an order certifying this action a class action.
The Police Department defendants, construing the complaint as demanding that the court require police officers to make an arrest in every case in which a woman asserts that her husband has beaten her, contend that such relief may not be granted. Citing a series of cases in which the courts have declined to impose liability on a municipality for the failure of police to make a warranted arrest (see, Motyka v City of Amsterdam, 15 NY2d 134; Riss v City of New York, 22 NY2d 579), the Police Department defendants argue that the court must uphold the discretionary power of the police officer at the scene to judge, in each "particular situation”, whether an arrest is warranted.
This argument is entirely correct, but it misses the point of the complaint. Plaintiffs do not seek to abolish the traditional discretionary powers of the police; they merely seek to compel the police to exercise their discretion in each "particular situation”, and not to automatically decline to make an arrest solely because the assaulter and his victim are married to each other.
For example, in one of the affidavits submitted by plaintiffs on these motions, a woman asserts that the police arrived after her husband "grabbed me by the throat and beat me” and "brandished a straight razor and threatened me with it * * * [and] tore my blouse off my body and gouged my face, neck, shoulders and hands with his nails, in full public view”. The police, she avers, advised her "that since this was a 'family matter’ there was nothing they could do and that I would have to go to Family Court”. Another battered woman’s call to the police station assertedly elicited the following advice: "There is nothing we can do. Our hands are tied. The police can’t act without an order of protection. Even if you had an order of protection, if your husband harassed you and you called the police, he would be arrested and released the next day. This would probably provoke your husband and put you in more danger”.
Another woman, going to a police station after just being treated at a hospital emergency room, says she "was advised that the police would take no action and I was advised to go to Family Court on Monday morning. They said that because I was married they could do nothing. The police officer could see *1050 my bruised and swollen face”. Yet another says that when she was told by a police officer "that I would have to go to Family Court and that the police could not help me”, she asked "if that meant that my husband would not be breaking the law by beating me. The police officer said that that wasn’t exactly what he meant, and explained that what he meant was that I had to get an Order of Protection from Family Court before the police could help me”. Similar allegations abound of police refusal to act, not because of the merits of the particular case, but apparently as a matter of policy, in cases where the victim was married to her assailant.
Even more disturbing are incidents alleged in the affidavits in which the responding officers are quoted as giving support to the assaulting husband. Thus, one woman, whose arm had just been sprained by her husband’s attack, requested his arrest, and says she was informed by a police officer that "there is nothing wrong with a husband hitting his wife if he does not use a weapon”. Another wife, who was slapped and struck with a knife by her husband, says she heard the officer who refused to arrest her husband, say to her husband, "Maybe if I beat my wife, she’d act right too”.
This court has the power to compel the Police Department defendants to perform the duty imposed upon them by law to exercise their discretion, and to exercise it in a reasonable, non-arbitrary manner (see, Matter of State Soc. of Professional Engrs. v Education Dept. State of N. Y., 262 App Div 602, 604; Matter of City of Schenectady v New York State Off-Track Pari-Mutuel Betting Comm., 69 Misc 2d 929, revd on other grounds, 39 AD2d 983; Matter of 1350 6th Ave. Corp. v Department of Housing, 197 Misc 982, 984). And the police owe a duty of protection to battered wives, in the same manner they owe it to any citizen injured by another’s assault, notwithstanding the fact that primary jurisdiction for adjudication as to such assaults lies with the Family Court rather than the Criminal Court (cf., People v Brady, 54 Misc 2d 638; People v Hebmann, 54 Misc 2d 666). Indeed, it has been held that women armed with orders of protection are owed "a special duty” of protection by the police (Baker v City of New York, 25 AD2d 770, 771).
The plethora of papers submitted by plaintiffs are more than adequate to create a factual issue as to whether there is a failure by the police to perform their duty of providing persons in plaintiffs’ position with proper police service, by *1051 pursuing a discriminatory police policy. For this reason, the Police Department defendants’ motion for summary judgment dismissing the complaint must be denied.
The Probation Department defendants also seek to dismiss the complaint, asserting that the complaint seeks "to have this Court take over and supervise the minute, day-to-day functions of an executive branch of government”. The allegations of the complaint, however, while to a minor extent quibbling over details of the Probation Department’s functions, in the main address themselves to claims that the actions of the probation personnel at the Family Courts prevent proper access by battered wives to the court, in violation of the Family Court Act.
Section 823 of the Family Court Act provides that:
"(a) Rules of court may authorize the probation service
(i) to confer with any person seeking to file a petition, the potential petitioner and other interested persons concerning the advisability of filing a petition under this article, and
(ii) to attempt through conciliation and agreement informally to adjust suitable cases before a petition is filed over which the court apparently would have jurisdiction.
(b) The probation service may not prevent any person who wishes to ñle a petition under this article from having access to the court for that purpose.
(c) Efforts at adjustment pursuant to rules of court under this section may not extend for a period of more than two months without leave of a judge of the court, who may extend the period for an additional sixty days. Two successive extensions may be granted under this section.
(d) The probation service may not be authorized under this section to compel any person to appear at any conference, produce any papers, or visit any place”. (Emphasis added.)
In one of the affidavits submitted by plaintiffs, a woman alleges that her husband broke into her apartment and threatened her with a knife. She says that she went to Family Court for an order of protection, only to be told by a probation officer that "I couldn’t see a judge because I had no case, and that my husband could enter and leave my apartment whenever he wanted. * * * My husband had every right to break into my apartment. She also said that since there were no witnesses, there was no reason for an Order of Protection.”
The probation officer then allegedly spoke to a social worker *1052 who was interested in this woman’s matter, and the social worker states that the probation officer said that "a man’s home is his castle. He had every right to do whatever he wanted in his apartment”. Another probation officer assertedly told a woman who sought an order of protection two weeks after her husband assaulted her that such orders were obtainable only "if you were beaten by your husband today”. Another woman avers that she was advised by a probation officer that "I could only see a judge if my husband was present”.
Additionally, in a large number of cases, battered wives seeking immediate orders of protection aver that they were not advised that the intake conference with probation officers was voluntary, and that they had the right to an immediate hearing. Instead, they assert, probation officers told them that they could not obtain an order of protection that day, but had to return for a further interview. Thus, one woman says she was given a date two weeks later, and, when she protested, was informed that, "I’m sorry, you can’t see a judge today”. A similar experience was reported by a large number of affiants. On one reported occasion, a battered wife was dismissed by a probation officer with a curt, "don’t hassle me”, when she attempted to insist upon her right to an immediate hearing.
The Probation Department defendants assert, however, that the allegations of the complaint have been rendered "moot”, since, effective January 1, 1977, the Department has a rule requiring probation officers to advise prospective petitioners of their right to by-pass the intake conference and seek an immediate petition. However, the existence of a written rule does not render moot allegations based upon actual conduct in violation of the rule. Moreover, in a number of instances documented in plaintiffs’ affidavits, the conduct of probation officers since January 1 has not been noticeably different.
If proven at a trial, the allegations of the complaint, and the affidavits submitted on these motions, are sufficient to show a callous disregard by probation officers of the statutory rights of women too poor or ignorant to retain legal counsel, who need immediate protection from assaults by their husbands. And this court has the power to compel defendants to comply with their statutory duties and responsibilities. The Probation Department defendants’ motion to dismiss the complaint must therefore be denied.
The allegations of the complaint and the accompanying *1053 affidavits do not, with respect to the Family Court clerk defendants, parade the same tales of horror as they do with regard to the other defendants. They do, however, present allegations of instances in which petition clerks refused to prepare petitions because there were no visible signs of injury, or because of a mistaken view of the law. And, in one alleged incident, a woman in fear of her husband’s attacks was informed by a petition clerk that seeing a Judge would not "help” unless she was prepared to herself serve a summons upon her husband.
It may be, as the Family Court defendants urge, that these are but "isolated instances”, and it may also be that these charges are more reasonably subject to administrative discipline than judicial decree. Nevertheless, sufficient has been shown with respect to the claim that the Family Court defendants have not complied with their statutory duties, to preclude dismissal of the complaint as a matter of law.
The Family Court defendants’ motion for summary judgment must therefore be denied, except with respect to the eighth and ninth causes of action as against such defendants, since these causes of action relate solely to activities of personnel under the supervision of the Probation Department, and do not allege a cause of action against the Family Court defendants.
The complaint seeks a number of varying forms of relief. It may well be that many of them are not properly obtainable in this action. But, at this early stage of the litigation, and before the exploration of the facts at a trial, the court ought not restrict the nature of the remedy, if any, that a trial court — in doing equity — may, within the limitations of its power, choose to fashion. Therefore, except as above-indicated, the motion by all defendants to dismiss the complaint is denied.
Plaintiffs’ motion to certify this action a class action is also denied. As the action is solely against governmental defendants, in their official capacities, and seeks declaratory and injunctive relief, the designation as a class action is unnecessary. The defendants are bound by stare decisis to follow whatever ultimate determination may be made, with respect to any and all persons similarly situated to plaintiffs (Matter of Martin v Lavine, 39 NY2d 72.) Moreover, attempts to provide for adequate notice to the class would result in needless procedural complications.
The denial of class action status, of course, shall in no way *1054 limit plaintiffs’ right to fully present their evidence, whether from party or nonparty witnesses.