*556 OPINION OF THE COURT
Margaret Taylor, J.
In this small claims action, plaintiff, Elba Rodriguez, as guardian of Eric Rodriguez, alleges physical abuse of her child by defendant, Janet Johnson, a school bus matron. Eric Rodriguez’s demeanor established his upset and humiliation as a result of being struck, both at the time of, and subsequent to, the incident. Eric’s mother testified that prior to the episode her son had looked forward to going to school and to riding the bus with Ms. Johnson. Since the incident, Eric has been apprehensive and agitated about going to school and he is afraid to ride the bus.
It appears from the testimony at trial that the children on the bus Eric was riding were being generally noisy and troublesome. Eric himself was talking loudly and moving about in his seat. The court therefore concludes that defendant acted with some provocation and did not slap Eric because of maliciousness, but rather as a result of frustration and anger. Further, the court does not find that the slap itself was an excessive use of force.
THE HISTORY OF CORPORAL PUNISHMENT
The court finds, however, that the physical assault of children, regardless of the degree, cannot be legally countenanced.[1] Presently the common-law tort of battery protects all adults from unauthorized physical contact. Historically, however, only men moved about freely without fear of physical intimidation, harassment or reprisal.[2] Women and children, on the other hand, were viewed as the property of husbands and fathers.[3] As chattel, they were not entitled to freedom from bodily harm. Under early common law husbands could chastise their wives providing they did not do so in an unusually cruel or violent manner.[4] Such punishment was considered *557 necessary to control a wife’s behavior.[5] Indeed, only during the past 15 years have there been significant changes in both the public perception of, and the legal system’s response to, abuse of wives by husbands.[6] Notably, the written law which once condoned the batterer’s actions now condemns them.[7]
Children have also historically been the victims of approved violence. "Stubborn child laws”, which prescribed the death penalty for disobedient children, were at one time contained in the statutes of Massachusetts and Connecticut.[8] Severe beatings were often justified by the need to teach children obedience. Similarly, men justified the sexual harassment of children with references to their inherently provocative nature. To quote one noted historian, " '[t]he history of childhood is a nightmare from which we have only recently begun to awaken. The further back in history one goes, the lower the level of child care, and the more likely children are to be killed, abandoned, beaten, terrorized, and sexually abused’.”[9]
Under the common law, teachers stood in loco parentis to their students.[10] This doctrine authorized the teacher to use whatever force the parent could use to restrain and correct a child.[11] Thus, the right to physically assault a child extended beyond the child’s natural parents; a teacher could use corporal punishment to discipline a child and such punishment did not give rise to a cause of action for damages.[12] Only in the most extreme cases could the teacher be held at all liable.
Today, since public education is mandatory, the doctrine of in loco parentis is declining both in importance and acceptance. *558 [13] Nonetheless corporal punishment continues as States begin to propose that they themselves may inflict such punishment as is reasonably necessary for educating and disciplining children.[14] Therefore, the court finds it unnecessary to consider the issues raised by corporal punishment inflicted by parents.
Clearly, society’s views of violence against women and children have shifted dramatically.[15] Child abuse is a problem of growing concern. As recognition of children’s vulnerability has heightened, penalties for abusive parents have harshened. Corporal punishment by educators, however, has remained an exception to this general trend and this must change.
THE PSYCHOLOGICAL AND PHYSICAL RISKS
Physical violence should never be invoked, least of all against children who are so seriously harmed by it.[16] Studies have consistently shown that not only do children themselves suffer when they are physically violated, but they often respond by being physically abusive to those weaker than themselves.[17] Children justifiably sense a great deal of unfairness in the allocation of corporal punishment. As in this case, it is most often the weaker, misbehaving child who is struck, not the stronger, more powerful and equally ill-behaved one.
Sanctioning any degree of corporal punishment can also heighten the risk of serious child abuse by those in positions of authority. Children’s emotional dependence on adults makes them especially vulnerable to such abuse, particularly if they are unable to determine when "permissible” physical punishment becomes impermissibly excessive.[18]
*559 THE CURRENT REMEDIES
The Penal Law defense of justification is granted to teachers who reasonably resort to physical force to discipline their charges.[19] This standard of reasonableness would protect a "mild” use of violence, such as is present in this case, from criminal sanctions.[20] Therefore, only in cases of excessive physical punishment could school personnel be held criminally liable.
In Matter of Bott v Board of Educ. (41 NY2d 265 [1977]), the Court of Appeals found that the use of force against students by a teacher may form the basis of disciplinary charges against that teacher, regardless of whether the force used was sufficient to constitute a crime. The court found further that the provision of the Penal Law providing for a defense of justification does not set the standard to which school personnel may be held in the performance of their duties in a noncriminal context.
Thus, school personnel may be disciplined for imposing corporal punishment when such conduct is insufficient to establish criminal liability. Nonetheless, many school districts in this State will not take disciplinary action against such personnel except in cases of excessive or unjustified physical punishment.[21] Those districts have indicated that they consider the appropriateness of the teacher’s conduct in deciding whether or not to take disciplinary action. Such an approach is not required to sustain a suit for monetary damages. Civil liability on the part of school personnel does not require the same findings as disciplinary action.
While some States today have adopted the common-law approach and have permitted the use of such force as a teacher or administrator reasonably believes to be necessary for the child’s proper control and education. The inherent dangers in even the most seemingly reasonable corporal punishment have caused a number of States to prohibit it in all *560 forms.[22] The Legislature of this State has remained silent by neither expressly privileging nor prohibiting the physical assault of children by school personnel. Dicta to the contrary aside, this court finds no value in continuing the practice of corporal punishment out of deference to its historical acceptance.[23] Indeed, only by abandoning past attitudes regarding women, children and minorities has our society been able to progress and become more civilized. Abolishing corporal punishment is another step on this road to a more humane Nation.[24]
It is time for the civil law to recognize that children are entitled to equal protection. The tort of battery, which once protected only the bodily integrity of men, must now protect *561 all persons, be they adults or children, from unauthorized physical contact. Physical abuse in even the slightest degree seriously harms children. It is not only immoral and unethical, but also unfair and unjust and therefore intrinsically illegal. It is most appropriate to consider such abuse as the tort of battery. Any person who physically assaults a child for any reason other than self-defense or the defense of others is liable to that child for monetary damages.
Accordingly, judgment is awarded in the amount of $250 to the mother, Elba Rodriguez, on behalf of the claimant child plus costs and disbursements.

. See generally, Purcell, Limiting the Use of Corporal Punishment in American Schools: A Call for More Specific Legal Guidelines, 13 JL & Educ 183; Herman, A Statutory Proposal to Prohibit the Infliction of Violence Upon Children, 19 Fam LQ 1 (1985).

. Gordon, Child Abuse, Gender and the Myth of Family Independence: Thoughts on the History of Family Violence and its Social Control 1880-1920, 12 Rev L & Soc Change 524 (1983-1984).

. Id., at 524.

. Id., at 524.

. Id., at 524.

. Waits, The Criminal Justice System’s Response to Battering: Understanding the Problem, Forging the Solutions, 60 Wash L Rev 267 (1985).

. Id., at 268; see also, Bruno v Codd, 90 Misc 2d 1047 (Sup Ct 1977), revd in part, appeal dismissed in part 64 AD2d 582 (1st Dept 1978), affd 47 NY2d 582 (1979).

. Herman, op. cit., at 6-7.

. Id., at 4, quoting de Mause, The Evolution of Childhood in The History of Childhood I (de Mause ed 1974). Herman notes that de Mause’s book is one of the few available dealing with the history of children, de Mause lays before the reader a brief but grisly history of the treatment of children which he shows to have included, up until quite recently, everything from regular and brutal beatings as the norm, to frequent use of infanticide.

. Proehl, Tort Liability of Teachers, 12 Vand L Rev 724 (1959).

. Id., at 725.

. Id., at 725, 727.

. Herman, op. cit., at 13.

. See, e.g., Ingraham v Wright, 430 US 651, 662 (1977).

. Herman, op. cit., at 13.

. It should also be noted that there is serious debate over the efficacy of corporal punishment. For excellent discussions of this see, Herman, op. cit. or Dubanoski et al., Corporal Punishment in Schools: Myths, Problems and Alternatives, 7 Child Abuse & Neglect 271 (1983). This debate raises the question of whether States have any justification for permitting corporal punishment if it serves no legitimate child-rearing purpose.

. See, Stoneman, Corporal Punishment in Schools: Time for a Change, 4 J Juv L 155 (1980): "Studies demonstrate almost uniformly that there is a direct correlation between the infliction of corporal punishment and subsequent aggressive behavior.”; Herman, op. cit., at 24-25; Kaufman, Psychiatric Implications of Physical Abuse of Children, in Protecting the Battered Child, at 17-22 (1962).

. Herman, op. cit., at 41.

. Penal Law § 35.10.

. See, e.g., People v Mummert, 183 Misc 243 (Sup Ct 1944); People v Baldini, 4 Misc 2d 913 (Sup Ct 1957).

. See, e.g., Matter of Bott v Board of Educ., 41 NY2d 265 (1977); Matter of Jerry v Board of Educ., 44 AD2d 198 (4th Dept 1974).

. For example, Massachusetts, Maine, New Jersey and Vermont have adopted statutes which either expressly or by implication outlaw corporal punishment in their respective schools. (Mass Gen Laws Ann, ch 71, § 37G; Me Rev Stats Ann, tit 17-A, § 106 [2]; NJ Stats Ann § 18A:6-1; Vt Stats Ann, tit 16, § 1161a.) In addition, a New Hampshire statute allowing corporal punishment has been nullified by an administrative regulation. See, Paquet, Judicial Rulings, State Statutes and State Administrative Regulations Dealing with the Use of Corporal Punishment in Public Schools, at 84-85 (1982), quoting New Hampshire State Board of Education Policy Statement No. 2865 (Oct. 27, 1975): "Corporal Punishment shall be allowed only in cases of self-defense or under very exceptional circumstances. Such punishment is not recognized by the State Board of Education as a desirable method of discipline in New Hampshire schools.” Hawaii and the District of Columbia have also prohibited corporal punishment by administrative regulation. (See, Paquet, op. cit., at 74, 35.) In Rhode Island, although the State government has not prohibited the use of corporal punishment, none of the 39 school districts in the State allow its use. (See, Herman, op. cit., at 13.) Lastly, several school districts in this Sate, including New York City, have outlawed all forms of corporal punishment. (See, bylaws of the Board of Educ, City School Dist of City of NY, § 10.4 [1977]: "No corporal punishment shall be inflicted in any of the public schools, nor punishment of any kind tending to cause excessive fear or physical or mental distress.) Between 1984-1985 the State Board of Regents proposed a State-wide statute similar to the New York City rule. (See, New York State Educ Dept, "Proposed Rule Making: Corporal Punishment,” ID No. EDU-03-85-00007-P, NY Reg [Jan. 16, 1985].)

. See, Ingraham v Wright (430 US 651 [1977]) in which the Supreme Court held that the 8th Amendment applies to punishments imposed in the criminal process and not to punishments imposed on school children, a constitutional issue not relevant to the tort case here. The court in Ingraham stated that the privilege to use corporal punishment dated back to colonial times. The court also noted, however, that professional and public opinion on the use of such punishment was extremely divided, and that it therefore could not discern a trend away from the practice. Today, such a trend is far more evident (see, n 22) and is being propelled by the increasing evidence that any degree of violence harms children.

. Several States and school districts have begun on this road (see, n 22, above).