HELEN CALLOWAY, Plaintiff-Appellant, v. ARTHUR KINKELAAR *et al.*, Defendants-Appellees.

Fifth District   No. 5—92—0652

Opinion filed May 11, 1994.

Robert E. Brown, of Ronald Tulin, Ltd., of Charleston, for appellant.

Brad K. Bleyer, of Bleyer & Bleyer, of Marion, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Plaintiff, Helen Calloway, appeals from an order of the circuit court of Effingham County granting the motions of defendants, Ar-

thur Kinkelaar, as sheriff of Effingham County (hereinafter sheriff), and the county of Effingham (hereinafter county), to dismiss plaintiff's complaint for failure to state a cause of action. The trial court followed the general rule that law enforcement officials have no duty to protect individual citizens from crime, only a duty to protect the general citizenry. We affirm in part, reverse in part, and remand.

## I

Plaintiff brought a four-count complaint against the sheriff and the county for damages she sustained after she was abducted by her estranged husband. Count I, a wilful and wanton count, and count II, a negligence count, are directed against the sheriff for his failure to fulfill an alleged duty to plaintiff by virtue of an order of protection which was previously entered with the express purpose of preventing such abuse and harassment by her estranged husband. (Ill. Rev. Stat. 1991, ch. 40, par. 2312—1 (now 750 ILCS 60/201 (West 1992)); ch. 38, par. 112A—4(i) (now 725 ILCS 5/112A—4(i) (West 1992)).) Counts III and IV mirror counts I and II but are directed against the county under a theory of *respondeat superior*. Plaintiff's complaint alleges that during her marriage, her husband engaged in a course of physically and mentally abusive conduct toward her and her two children, including physical attacks and death threats to plaintiff and threats of her husband to commit suicide. As a result of her husband's violent and abusive conduct, plaintiff was granted an emergency order of protection on March 13, 1991, which prohibited her husband from:

"(a) Harassing, physically abusing, or interfering with the personal liberty of Plaintiff or her children;

(b) Entering or remaining at the home of Plaintiff's parents;

(c) Entering Plaintiff's place of employment at Garden's Restaurant in Effingham, Illinois; [or]

(d) Making telephone calls to Plaintiff's place of employment."

On March 13, 1991, the sheriff personally served the emergency order of protection on the husband, and on March 20, 1991, plaintiff was granted a plenary order of protection. The plenary order of protection was personally served on her husband by the sheriff on the same day it was granted, and thus, the sheriff "knew or should have known of the prohibitions contained therein."

At approximately 5:30 a.m., on April 4, 1991, contrary to the provisions of the order of protection, the husband began making telephone calls to plaintiff at her place of employment. The calls were threatening in nature and included, among other threats, a

threat by the husband to kill himself in the presence of plaintiff and their five-year-old daughter if plaintiff did not go to the marital home to pick up their daughter. In response to such threats, plaintiff called her father and asked him to go to the marital home and pick up her daughter. Immediately after calling her father, plaintiff received another call from her estranged husband at which time she advised him that her father was coming to pick up their daughter. The husband responded that he would kill plaintiff's father if he entered the marital home. At approximately 5:50 a.m., plaintiff telephoned the Effingham County sheriff's department and advised the dispatcher of the telephone calls she was receiving from her estranged husband, including his threats to kill plaintiff's father. Plaintiff further advised the dispatcher that her husband was armed with a gun and that their minor daughter was with him. Plaintiff provided the dispatcher with the location of the marital home and also told the dispatcher she was going to the marital home herself to ensure the safety of her daughter.

At approximately 6 a.m., the sheriff was notified by his office of the telephone calls and threats made by plaintiff's husband. In response, the sheriff drove to the marital residence and briefly observed it from his squad car. The sheriff left without further investigation. Upon her arrival, plaintiff determined that her daughter and father were not at the marital home. She then returned to the restaurant where she was employed. Shortly after her return, plaintiff received more threatening telephone calls from her estranged husband, who told her he saw the sheriff in front of his home. At approximately 7:30 a.m., plaintiff received a telephone call from the sheriff's department dispatcher who asked plaintiff whether she had gone to the marital home. Plaintiff told her she had, and her daughter was safe, but her estranged husband was continuing to make harassing telephone calls to her. Plaintiff "advised and emphasized" to the dispatcher that her estranged husband was in violation of the order of protection. The dispatcher replied that she was aware of the order and had a copy of it in front of her. At 7:50 a.m., the dispatcher again called plaintiff and told her that officers with the sheriff's department recommended that plaintiff call her attorney and seek advice as to how to proceed.

At approximately 8 a.m., plaintiff's husband, armed with a pistol, entered plaintiff's place of employment, grabbed plaintiff by the hair, and forced her at gunpoint to leave with him. At approximately 8:39 a.m., a sergeant with the sheriff's department observed a pickup truck occupied by plaintiff and her estranged husband. The sergeant followed the truck. At approximately 8:47 a.m., two State troopers

blocked the road on which the truck was traveling. At approximately 8:50 a.m., the pickup truck stopped at the roadblock, and plaintiff, who was forced by her estranged husband to drive the pickup truck, exited the vehicle and took cover behind one of the squad cars. Law enforcement officials at the scene told plaintiff's husband to place his hands on top of his head and exit the pickup truck. When plaintiff's husband did not respond, the officers discovered that plaintiff's husband had shot himself in the chest.

Plaintiff alleges in her complaint that at all times the sheriff had probable cause to believe plaintiff's husband was in violation of the order of protection and that the sheriff had a duty to prevent further abuses and harassment, including but not limited to providing or arranging transportation for plaintiff to a place of safety and/or arresting her estranged husband. Plaintiff alleges that as a direct and proximate result of several wilful and wanton and/or negligent acts or omissions of defendants, her life was threatened and she was forced to suffer and endure extreme emotional distress and trauma which continues to the present day. Plaintiff was forced to seek psychological counseling and was compelled and will be compelled to spend large sums of money for her psychological care. As a further result, plaintiff was and will be prevented from attending to her usual affairs and duties and has lost and will lose large sums of money which otherwise would have accrued.

The sheriff and the county moved to dismiss plaintiff's complaint for failure to state a cause of action. (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992)).) In dismissing the complaint, the trial court found that the facts alleged in each count did not give rise to a duty. Specifically, the trial court stated:

> "The Court specifically finds that the Complaint herein fails to allege (nor could it if the allegations pled are true) that the Plaintiff was under the immediate and direct control of the defendants thereby bringing this action within the exception of the public duty doctrine. Absent a clear expression of legislative intent in the Domestic Violence Act to carve out a further exception to that doctrine for persons protected by Order of Protection, which this Court fails to find in said Act or its legislative history (insofar as available)[,] this Court is compelled to follow existing case law requiring that element to be pled."

## II

Plaintiff contends that the public duty doctrine is inapplicable under the facts of the instant case because plaintiff was, by virtue of the Illinois Domestic Violence Act of 1986 (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 2311—1 et seq. (now 750 ILCS 60/101 et seq. (West

1992))) and article 112A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 112A—1 *et seq.* (now 725 ILCS 5/112A—1 *et seq.* (West 1992))), removed from the community at large and elevated to a class of persons requiring special protection or, alternatively, that the General Assembly has statutorily extended the parameters of the common law "special duty" exception to the public-duty doctrine through the Act. Defendant replies that there is no clear indication the General Assembly intended to extend the parameters of the common law "special duty" exception to the public-duty doctrine and urges us to affirm the trial court's order.

■ It is well settled that the duty of law enforcement officers to preserve a community's well-being is generally not owed to specific individuals but rather to the community at large. (*Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 473 N.E.2d 69; *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.)

> "The rule that law enforcement agencies and officers are not liable to third parties for the failure to prevent crime reflects the judgment that to hold otherwise would impose an impossible burden on law enforcement agencies and officers, requiring them to carry out a myriad of difficult and frequently conflicting duties in guaranteeing the safety of every individual citizen." (*Santy*, 129 Ill. App. 3d at 662, 473 N.E.2d at 72.)

This general public-duty rule "embodies the conclusion that a police department's negligence—its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others." (*Porter*, 88 Ill. App. 3d at 445, 410 N.E.2d at 612.) An exception to the public-duty rule arises when the police have assumed a special relationship or are under a special duty to an individual which elevates his status beyond that of a member of the general public. (*Vasconcelles v. City of Springfield* (1988), 170 Ill. App. 3d 404, 524 N.E.2d 720; *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363, 243 N.E.2d 214, 215-16.) In order to fit within this exception it is generally required that the following four elements be alleged by plaintiff:

> "(1) [T]he municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation]; (2) there must be allegations of specific acts or omissions on the part of the municipality [citation]; (3) the specific acts or omissions on the part of the municipal employees must be either affirmative or wilful in nature [citation]; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation]." *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106.

Here, the trial court found that while plaintiff may have alleged

facts sufficient to establish the first three requirements of the exception, plaintiff could not show that she was injured while under the direct and immediate control of the sheriff and the county. However, we find that the Act, which is to be construed together with article 112A (Ill. Rev. Stat. 1991, ch. 38, par. 112A—1 *et seq.* (now 725 ILCS 5/112A—1 *et seq.* (West 1992))), does indeed carve out an exception to the public-duty doctrine and elevates the holder of an order of protection to a status above that of other members of the general public.

Up until this point, New York has been the only other State to recognize that a "special duty" is owed to persons under a court order of protection. In *Baker v. City of New York* (1966), 25 A.D.2d 770, 269 N.Y.S.2d 515, the plaintiff was shot by her estranged husband and seriously injured while in the waiting room of the former domestic relations court of the city. An order of protection had been issued some five months earlier directing the husband "not to strike, molest, threaten or annoy" the plaintiff. The order of protection provided that upon its presentation by the plaintiff to any peace officer, the officer would be authorized to arrest the husband for a violation. There was evidence that the husband had created a disturbance at the family home some months after the issuance of the order of protection and that a police officer was summoned to the home but refused to take action against the husband even after the plaintiff presented the officer with the order. On the day of the shooting, the plaintiff went to see a probation officer assigned to the domestic relations court. The probation officer told the plaintiff her estranged husband was ill and could not come to court. While making a telephone call in the corridor, the plaintiff saw her husband enter the building. The plaintiff informed the probation officer that her husband was present and asked the officer if she could wait in his office because she was frightened. The probation officer instead told her to go to the waiting room. No guards were in the waiting room, even though some were assigned to the court. The plaintiff was shot 15 to 20 minutes after the probation officer told her to go to the waiting room. The *Baker* court reasoned:

> "Plaintiff, we think, was a person recognized by the order of protection as one to whom a special duty was owed. The order of protection was issued by the court pursuant to statute (former Domestic Relations Ct. Act, § 92, subd. (7)); and the certificate with which plaintiff was furnished constituted authority to a peace officer, when presented by the plaintiff, to arrest the husband when charged with a violation of the terms of the order (former Domestic Relations Ct. Act, § 126). The order of protection, though

a relatively new invention in the law (note, 2 Albany L. Rev. 172), was intended both as a remedial and preventive arm of the former Domestic Relations Court ('Use of Protection Orders in Family Court Disputes', 2 Columbia Journal of Law and Social Problems, No. 3, p. 1). Plaintiff was thus singled out by judicial process as a person in need of special protection and peace officers had a duty to supply protection to her." *Baker*, 25 A.D.2d at 771-72, 269 N.Y.S.2d at 518.

See also *Sorichetti v. City of New York* (1978), 95 Misc. 2d 451, 408 N.Y.S.2d 219, *aff'd* (1979), 70 A.D. 573, 417 N.Y.S.2d 202.

The Illinois Act singles out those who are victims of domestic violence as persons in need of special protection by law enforcement officials. It allows those who are victims of domestic violence to receive orders of protection prohibiting such abuse. Section 214(b)(1) prohibits a "respondent's harassment, interference with personal liberty, intimidation of a dependent, [or] physical abuse." (Ill. Rev. Stat. 1991, ch. 40, par. 2312—14(b)(1) (now 750 ILCS 60/214(b)(1) (West 1992)).) Section 214(b)(3) prohibits a respondent from entering or remaining at a petitioner's place of employment. (Ill. Rev. Stat. 1991, ch. 40, par. 2312—14(b)(3) (now 750 ILCS 60/214(b)(3) (West 1992)).) When a law enforcement official is presented with an order of protection or has knowledge of its existence, the official is allowed to make an arrest without a warrant if the official has reason to believe that the respondent has violated the order. Article III of the Act requires law enforcement officials to act and assist a victim who presents an order of protection to an officer. (Ill. Rev. Stat. 1991, ch. 40, par. 2313—1 *et seq.* (now 750 ILCS 60/301 *et seq.* (West 1992)).) Plaintiff herein obtained an order of protection and, thus, was singled out by the judicial process as a person in need of special protection. The sheriff had a duty to provide her with such protection.

■ The Act itself points out that one of its purposes is to "[e]xpand the civil *** remedies for victims of domestic violence." (Ill. Rev. Stat. 1991, ch. 40, par. 2311—2(6) (now 750 ILCS 60/102(6) (West 1992)).) The Act further provides for law enforcement liability on a limited basis. Section 305 of the Act states:

"§ 305. Limited law enforcement liability. Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful or wanton misconduct." (Ill. Rev. Stat. 1991, ch. 40, par. 2313—5 (now 750 ILCS 60/305 (West 1992)).)

By this express language the General Assembly carved out an exception to the public-duty doctrine. We find that the General

Assembly intended to make a law enforcement officer and/or his employer (*e.g.*, the county) liable, but only for wilful and wanton acts of misfeasance or nonfeasance in the exercise of police power with respect to the enforcement of the Act. Both New York cases previously cited (*Baker v. City of New York* (1966), 25 A.D.2d 770, 269 N.Y.S.2d 515; *Sorichetti v. City of New York* (1978), 95 Misc. 2d 451, 408 N.Y.S.2d 219) found that complaints sounding in negligence were sufficient to constitute a cause of action against the law enforcement official and his or her employer. Our General Assembly clearly did not intend such a result. Only actions alleging wilful and wanton misconduct can survive a motion to dismiss.

As to plaintiff's complaint, we find that those counts alleging wilful and wanton misconduct are sufficient to take this case out of the general rule denying liability, since a "special relationship" existed between the sheriff and plaintiff by virtue of the order of protection. We, therefore, agree with the trial court that counts II and IV fail to state a cause of action, as those were negligence counts. We do, however, believe that count I stated a viable cause of action against the sheriff and count III stated a viable cause of action against the county, as those counts alleged wilful and wanton misconduct. The trial court therefore erred in dismissing counts I and III.

For the foregoing reasons, that portion of the order of the circuit court of Effingham County dismissing counts II and IV is affirmed, that portion of the order dismissing counts I and III is reversed, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

RARICK and MAAG, JJ., concur.