HEATHER HENDRICKS, a Minor, by her Father and Next Friend, Larry Hendricks, Plaintiff-Appellant, v. CHAMPAIGN-URBANA MASS TRANSIT DISTRICT, Defendant-Appellee.

Fourth District    No. 4—95—0459

Argued November 7, 1995.—Opinion filed November 30, 1995.

John McMahon (argued), of Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant.

Marc J. Ansel (argued), of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On March 2, 1995, a two-count complaint was filed in the circuit court of Champaign County on behalf of plaintiff Heather Hendricks, a minor, against defendant Champaign-Urbana Mass Transit District (District) to recover damages allegedly caused by the failure of a District bus driver to intervene in a criminal attack upon plaintiff when she was a passenger on a District bus on October 27, 1994. On May 17, 1995, the court granted defendant's motion pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1994)) to dismiss the complaint in bar of action.

Plaintiff has appealed. Count II was based upon a breach of the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) (745 ILCS 10/1—101 et seq. (West 1994)). Plaintiff claims no error in its dismissal. Count I was based upon defendant's alleged common law duty to a passenger. The dismissal of that count was based upon the immunity provided by section 4 of

the Local Mass Transit District Act (Transit Act), which was pleaded in defendant's section 2—619 motion and which states:

> "Neither the District *** nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals." 70 ILCS 3610/4 (West 1994).

■ Plaintiff maintains on appeal, as she did in the trial court, that section 4 of the Transit Act is subject to (1) a "special duty" exception which is applicable here and would nullify the immunity otherwise granted, and (2) a narrow construction which would negate immunity here, because the immunity granted by section 4 is in derogation of the common law. In regard to both of plaintiff's theories, she relies heavily upon the common law rule which requires carriers, such as the District, to exercise a high degree of care for its passengers. (*Hernandez v. Rapid Bus Co.* (1994), 267 Ill. App. 3d 519, 524, 641 N.E.2d 886, 890; *Cooper v. Bi-State Development Agency* (1987), 158 Ill. App. 3d 19, 24-25, 510 N.E.2d 1288, 1292.) We hold that section 4 did provide immunity here, and we affirm.

In count I plaintiff alleged (1) she was a passenger on a bus operated by defendant; (2) by virtue of its relationship with plaintiff, defendant owed her a special duty consistent with its status as a common carrier to exercise "the highest duty of care in the circumstances"; (3) as defendant's bus stopped at a bus stop, plaintiff was attacked by a copassenger and a second copassenger who had gotten off the bus and then reentered the bus to join in the attack; (4) the attack consisted of numerous repeated blows to her head and face over a period of several minutes; (5) defendant was guilty of negligence because (a) it failed to protect plaintiff against unreasonable risk of physical harm, (b) failed to exercise reasonable care to secure the safety of plaintiff while within defendant's charge, and (c) it failed to lend reasonable assistance or aid to plaintiff when her plight became apparent to defendant; and (6) as a direct and proximate result of one or more of the foregoing negligent acts or omissions on the part of defendant, plaintiff was physically and financially harmed.

■ The "special duty" exception upon which plaintiff relies has been carved out of the immunity granted to municipalities and their employees under the Immunity Act. To establish the existence of this "special duty," a plaintiff, seeking to place liability upon an otherwise immune governmental unit, must demonstrate the following requisites: (1) the defendant must be uniquely aware of the particu-

lar danger or risk; (2) the plaintiff must allege specific acts or omissions on the part of the defendant with respect to the danger; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 508, 565 N.E.2d 654, 659, *overruled on other grounds McCuen v. Peoria Park District* (1994), 163 Ill. 2d 125, 129-30, 643 N.E.2d 778, 781; *Rush v. City of Chicago* (1987), 163 Ill. App. 3d 725, 727-28, 517 N.E.2d 17, 19.

■ The "special duty" or "special relationship" exception has been invoked in two basic factual situations. The first occurs where a plaintiff sues a municipality for failure to enforce a law or ordinance, and the second occurs when a plaintiff sues a municipality for injuries negligently caused by police officers or fire fighters while performing their official duties. (*Burdinie*, 139 Ill. 2d at 507-09, 565 N.E.2d at 658-59.) In each case, the plaintiffs must demonstrate the municipalities owe them a special duty that is different from its duty to the general public. *Burdinie*, 139 Ill. 2d at 507-09, 565 N.E.2d at 658-59.

Any application of the "special duty" exception to the conduct of District bus drivers would have to arise from a theory that the common law duty of carriers to their passengers satisfies the direct and immediate control factor of the fourth prong of the *Burdinie* rule. If this were so, a "special duty" exception would virtually swallow and destroy any purpose for section 4 of the Transit Act, since the only people, other than their own employees, that transit districts could possibly have any duty to protect from criminal attack would be their passengers.

Plaintiff asserts that the brief history of section 4 of the Transit Act in the courts of review gives indication that the Supreme Court of Illinois may look favorably on her view that the "special duty" exception is applicable here. In *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1, that court upheld the constitutionality of section 27 of the Metropolitan Transit Authority Act (Metropolitan Act) (Ill. Rev. Stat. 1985, ch. 111$^2$/$_3$, par. 327), which contained the same immunity provision as section 4 of the Transit Act. In regard to the argument that section 27 was special legislation or denied equal protection because it granted immunity which other municipalities did not have because they were subject to the "special duty" exception, that court stated:

> "We need not consider whether or not the common law duty of common carriers to protect passengers from criminal acts of third parties must be identified with and treated the same as the 'special

duty' exception to the immunity conferred on municipal entities in section 4—102 for failure to protect individuals from crime. Even if we assume, *arguendo*, that the common law duty of carriers and the 'special duty' exception are analogous, as the plaintiff puts it, and that section 27 provides the CTA with a broader immunity than other municipal entities enjoy under the Tort Immunity Act, we conclude that section 27 does not violate the equal protection guarantee or constitute special legislation." (*Bilyk*, 125 Ill. 2d at 242-43, 531 N.E.2d at 6.)

The *Bilyk* court then concluded that valid reasons existed to give public transportation districts immunities that other municipalities did not have.

After *Bilyk*, in *Eagan v. Chicago Transit Authority* (1992), 240 Ill. App. 3d 784, 790, 608 N.E.2d 292, 296, a divided panel of the First District Appellate Court held that section 27 of the Metropolitan Act was subject to the "special duty" exception and reversed a dismissal of a complaint seeking recovery against the Chicago Transit Authority (CTA) for failure to protect a passenger from a criminal attack. The supreme court granted leave to appeal and reversed (*Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 634 N.E.2d 1093), holding that the plain language of section 27 granted the CTA immunity from the liability sought. That court refused to consider the question of whether the "special duty" exception was applicable, because that issue had not been raised in the circuit court.

As the supreme court held that the appellate court improperly considered the "special duty" exception in *Eagan*, that appellate court decision was not precedent. (*Eagan*, 158 Ill. 2d at 534-35, 634 N.E.2d at 1097.) It would not have been binding on us if it were. We agree with the dissent of Justice Greiman in that case where he explains that applying the "special duty" exception would "emasculate the impact of section 27" (*Eagan*, 240 Ill. App. 3d at 792, 608 N.E.2d at 297 (Greiman, P.J., dissenting)) and where he explains that the common law duty on carriers to care for their passengers does not place a carrier with sufficient control over passengers to satisfy the control element of the fourth prong of the *Burdinie* doctrine of the "special duty" exception (*Eagan*, 240 Ill. App. 3d at 793-94, 608 N.E.2d at 297-98 (Greiman, P.J., dissenting)).

We find nothing in the supreme court decisions in *Bilyk* and *Eagan* indicating that court deems the "special duty" exception is applicable to section 4 of the Transit Act or section 27 of the Metropolitan Act. The reasoning of *Bilyk* would indicate to the contrary. That opinion stated:

"The CTA was created by statute as a municipal corporation for

the purpose of owning and operating a public transportation system. The legislatively recognized function of the CTA is to provide transportation to the public at large, rather than to guarantee the safety of every individual passenger. Consequently, complete uniformity between the immunity given the CTA and municipal entities whose primary purpose is to protect citizens from crime is not required." (*Bilyk*, 125 Ill. 2d at 243, 531 N.E.2d at 6.)

"The legislature may reasonably decide to devote the moneys available exclusively to transportation costs and the welfare of the general public rather than to dilute those funds by compensating individuals harmed by third parties." *Bilyk*, 125 Ill. 2d at 247, 531 N.E.2d at 8.

We conclude that the common law duty the District owes to its passengers does not create a "special duty" exception to the immunity granted the District by section 4 of the Transit Act. We next consider whether the fact that the immunity of section 4 is in derogation of that common law duty requires section 4 to be narrowly interpreted. Plaintiff would have us give such an interpretation to section 4 that its immunity would apply under most circumstances, but not where, as alleged here, the passenger was actually under attack, a District employee knew of the attack, and would likely have been strong and tough enough to defend the person attacked.

Plaintiff does not cite to us any case where liability has arisen from the failure of any person not a law enforcement officer or fire fighter to intervene when a third person is attacked. Rather, she relies upon *dictum* in *Getson v. Edifice Lounge, Inc.* (1983), 117 Ill. App. 3d 707, 713, 453 N.E.2d 131, 135. There, a suit for damages against a tavern operator was brought by a person injured in a fight outside the tavern. A judgment for the plaintiff on a jury verdict was reversed. The appellate court concluded the evidence showed that when the tavern operator reasonably learned that the assailant was dangerous, he called the police and directed the doorman not to let people in or out of the tavern. The opinion did state that "[o]nce the fight began *** [the operator] had a duty to act to protect his invitees." (*Getson*, 117 Ill. App. 3d at 713, 453 N.E.2d at 135.) While the language indicates a duty to take affirmative action when invitees are in danger, the language did not indicate that direct intervention in the fight was required even though no immunity was involved there.

Any narrow interpretation of the immunity granted by section 4 of the Transit Act which would leave the District's bus driver under a duty to intervene when passengers are attacked would cause

tremendous problems even if limited to situations where the driver was deemed to be physically able to compete with the assailant. Bus drivers would have to be selected with reference to their abilities to intervene and trained to do so. We feel certain that the legislature did not intend to so limit the immunity of section 4. Plaintiff's argument that common decency required the bus driver to intervene under the alleged circumstances does not require the imposition of a duty to do so.

We affirm for the reasons stated.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.