(No. 77391.–

HELEN CALLOWAY, Appellee, v. ARTHUR KINKE-LAAR *et al.*, Appellants.

*Opinion filed December 21, 1995.*

314

FREEMAN, J., specially concurring.
HEIPLE, J., joined by BILANDIC, C.J., dissenting.

James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellants.

Robert E. Brown, of Ronald Tulin, Ltd., of Charleston, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

In this case we determine whether the Domestic Violence Act of 1986 (the Act) permits a cause of action for damages in favor of persons protected by the Act whose injuries are alleged to have been caused by the willful and wanton misconduct of police officers in performing or failing to perform the affirmative obligations imposed on them by the Act.

## BACKGROUND

Plaintiff, Helen Calloway, filed a four-count complaint in the circuit court of Effingham County against the sheriff of Effingham County, Arthur Kinkelaar, and

the County of Effingham seeking to recover damages for injuries she sustained as a result of defendants' alleged willful and wanton or negligent failure to comply with certain provisions of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 1992)). The complaint pleads one count of willful and wanton conduct and one count of negligence against each defendant.

The complaint alleges that during plaintiff's marriage to Michael Calloway, he engaged in a physically and mentally abusive course of conduct toward her and her children, including threats to kill her and to kill himself. Based on Calloway's conduct, plaintiff was granted an emergency order of protection on March 13, 1991, and a plenary order of protection on March 20, 1991. After the court entered these orders, the sheriff personally served them upon Michael Calloway. Plaintiff alleges that the sheriff knew or should have known of the terms of the orders of protection, which prohibited the following conduct: harassment or interference with the liberty of plaintiff or her children, entering plaintiff's place of employment, telephoning her at her workplace, and entering or remaining at the home of plaintiff's parents.

On April 4, 1991, beginning at approximately 5:30 a.m., Michael Calloway violated the order of protection by making threatening telephone calls to plaintiff at her workplace, including a threat to kill himself in front of plaintiff and their five-year-old daughter if she did not come to the marital home to pick up the daughter. Plaintiff called her father to ask him to pick up the child. Immediately thereafter, Michael Calloway telephoned plaintiff at work again. During this conversation plaintiff informed him that her father was going to pick up their daughter. Calloway threatened to kill plaintiff's father if he entered the marital residence. Plaintiff then telephoned the Effingham County sheriff's department

to report the threatening calls. Plaintiff told the dispatcher that her husband was armed with a gun and that their child was with him. She gave the dispatcher the location of the home, and also told the dispatcher she was going there herself to ensure the safety of her daughter.

At approximately 6 a.m., the sheriff was notified by his office of the threats reported by plaintiff. In response, the sheriff travelled to the marital residence. He briefly observed the house and then drove off, without further investigation.

Plaintiff returned to work after determining that her daughter and father were not at the marital home. Shortly thereafter she received additional threatening calls from Michael Calloway. He told plaintiff he had seen the sheriff's car in front of the house.

At approximately 7:30 a.m., the dispatcher from the sheriff's department telephoned plaintiff and asked whether she had gone to the marital home. Plaintiff responded that she had and that her daughter was safe, but that defendant was continuing to make threatening telephone calls to her at work. Plaintiff also emphasized to the dispatcher that Michael Calloway was in violation of the orders of protection. The dispatcher acknowledged her awareness of the order, saying that she had a copy of it in front of her.

At approximately 7:50 a.m., the sheriff department's dispatcher again called plaintiff and told her that officers within the department were advising plaintiff to call her attorney and ask him what should be done. Approximately 10 minutes later, Michael Calloway, armed with a gun, entered the restaurant in which his wife was working and went to the kitchen, where he found plaintiff. He grabbed her by the hair and forced her to leave with him, at gunpoint. She was forced to drive his pickup truck.

At 8:39 a.m., a law enforcement officer saw the pickup truck and followed it. Within minutes, State troopers, acting in accordance with orders, blocked the road in front of Michael Calloway's pickup truck. As the truck stopped, plaintiff jumped out and concealed herself behind one of the parked squad cars. Michael Calloway stayed inside the truck, where troopers at the scene found him with a self-inflicted gunshot wound to the chest.

As a result of defendants' alleged breaches of duty, plaintiff claims that she has sustained extreme emotional distress and trauma, requiring her to undergo psychological counseling and causing her to sustain significant financial losses.

The above allegations form the factual basis for all four counts of the complaint. Counts I and II are directed against the sheriff individually and counts III and IV are directed against the county under a theory of *respondeat superior*. The legal basis for counts I and III is the alleged willful and wanton violation of statutory duties found in the Domestic Violence Act. Counts II and IV allege negligent violations of the Act.

Defendants filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), arguing that defendants owed plaintiff no actionable duty and therefore she failed to state a cause of action. In support, defendants invoked the common law public duty doctrine, under which municipalities and officers are immunized from liability for failing to supply police protection to specific individuals, as distinct from the public in general. Defendants further argued that the sole exception to this general rule of no liability is the special duty doctrine, which involves a multiple-factored test to determine whether, under a given set of circumstances, a police officer may be held liable to an injured

plaintiff based on the officer's undertaking of a special duty toward that individual. Defendants argued that the complaint could not withstand the motion to dismiss because plaintiff failed to adequately plead all of the elements of the special duty doctrine, specifically the requirement that the plaintiff was under the immediate and direct control of the officers at the time of her injury.

The trial court dismissed the entire complaint, with prejudice, for failure to state a cause of action. The appellate court affirmed the dismissal of the negligence counts but reversed the dismissal of counts I and III, which were premised on willful and wanton violations of duties imposed by the Domestic Violence Act. (261 Ill. App. 3d 63.) We allowed defendants' petition for leave to appeal (145 Ill. 2d R. 315).

## ANALYSIS

The ultimate issue for this court to determine is whether the well-pleaded allegations of plaintiff's complaint are actionable under Illinois law. Defendants focus almost exclusively on common law and statutory principles of governmental immunity. According to defendants, plaintiff cannot state a cause of action pursuant to the Domestic Violence Act, even for willful and wanton misconduct, unless she first establishes the elements of the special duty exception to governmental immunity. Defendants also raise a challenge to the constitutionality of the special duty doctrine and request this court to abolish it.

The complaint alleges that "plaintiff was a person entitled to special protection pursuant to the provisions of [the Domestic Violence Act and Code of Criminal Procedure], and had been so found by virtue of the Emergency Order of Protection and Plenary Order of Protection ***." Defendants, who knew that Michael Calloway was in violation of the orders of protection, had prob-

able cause to arrest him pursuant to the Domestic Violence Act. In light of the information given to defendants regarding Calloway's abuse, threats, and harassment of plaintiff, defendants had a duty under the statute to "immediately use all reasonable means to prevent further abuse and harassment, including *** [p]roviding or arranging transportation for [p]laintiff to a place of safety; *** [and] [a]rresting Michael Calloway." The complaint further alleges that defendants breached their statutory duties by engaging in conduct that was willful and wanton and/or negligent. These acts or omissions included defendants' failure to arrest or disarm Calloway in light of their knowledge of his threatening conduct, failure to arrange for plaintiff's transportation to a safe place, and failure to initiate an investigation upon driving to Calloway's home after being advised of the threats.

In deciding whether a complaint states a cause of action based on the negligent violation of a statute or ordinance, courts generally inquire whether the legislation in issue was designed to protect human life or property and, if so, whether the plaintiff is a member of the class intended to be protected. (*E.g.*, *Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 434.) This court also has recognized that tort liability may arise, on public policy grounds, for tortious conduct that would defeat the aims and goals of a particular statutory scheme. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172 (penalizing employer's retaliatory discharge of employee who filed worker's compensation claim).) If the plaintiff is a member of the protected class and his or her injury is of the type that the statute was intended to protect against, the plaintiff may recover upon establishing that the defendant's violation of the ordinance or statute proximately caused plaintiff's injury. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) A private remedy

may be implied from a remedial statute where there is a clear need to effectuate the purpose of such statute (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 389), even though no express remedy has been provided in the legislation (*Sawyer*, 89 Ill. 2d at 386, citing *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172).

In the case at bar, plaintiff's complaint is premised on the provisions of the Domestic Violence Act of 1986, which the General Assembly intended to be "liberally construed and applied to promote its underlying purposes" (750 ILCS 60/102 (West 1992)). Section 102 sets forth the Act's purposes: to "[r]ecognize domestic violence as a serious crime against the individual and society which *** promotes a pattern of escalating violence which frequently culminates in intra-family homicide" (750 ILCS 60/102(1) (West 1992)) and to "[r]ecognize that the legal system has ineffectively dealt with family violence in the past *** and has not adequately acknowledged the criminal nature of domestic violence; that, although many laws have changed, in practice there is still widespread failure to appropriately protect and assist victims" (750 ILCS 60/102(3) (West 1992)).

Of particular significance to the case at bar are two additional provisions of section 102, which state the following as express purposes of the Act:

"(4) Support the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse and, when necessary, reduce the abuser's access to the victim ***.
***
(6) Expand the civil and criminal remedies for victims of domestic violence; including, when necessary, the remedies which effect physical separation of the parties to prevent further abuse." (Emphasis added.) 750 ILCS 60/102(4), (6) (West 1992).

Under section 201, "[p]ersons protected by this Act" include "any person abused by a family or household member" (750 ILCS 60/201(a)(i) (West 1992)). In the case

at bar there is no dispute that plaintiff is a person protected under the Act or that she obtained, in accordance with the procedures outlined in article II of the Act, an emergency and a plenary order of protection based on Michael Calloway's abuse and harassment.

"Abuse" is defined as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty." (750 ILCS 60/103(1) (West 1992).) "Harassment" includes the following types of conduct, which unless "rebutted by a preponderance of the evidence *** shall be presumed to cause emotional distress":

"(i) creating a disturbance at petitioner's place of employment;

(ii) repeatedly telephoning petitioner's place of employment, home or residence;

\* \* \*

(vi) threatening physical force, confinement or restraint on one or more occasions." 750 ILCS 60/103(6) (West 1992).

Article III of the Act enumerates the responsibilities of law enforcement officers, which include "mak[ing] an arrest without warrant if the officer has probable cause to believe that the person has committed or is committing any crime, including but not limited to violation of an order of protection, under Section 12—30 of the Criminal Code of 1961, even if the crime was not committed in the presence of the officer." 750 ILCS 60/301(a) (West 1992).

Section 304 requires law enforcement officers to take specific steps to assist victims of abuse, as follows:

"Assistance by law enforcement officers. (a) Whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, *the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including:*

(1) Providing or arranging transportation for the victim of abuse *** to a nearby place of shelter or safety, or ***

providing or arranging for transportation for the victim to the nearest available circuit court judge or associate judge so the victim may file a petition for an emergency order ***;

(2) Accompanying the victim of abuse *** to his or her place of residence for a reasonable period of time to remove necessary personal belongings and possessions;

* * *

(5) Arresting the abusing, neglecting, or exploiting party where appropriate." (Emphasis added.) 750 ILCS 60/304 (West 1992).

Section 305 limits law enforcement liability, as follows:

"Limited law enforcement liability. Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, *unless the act is a result of willful or wanton misconduct.*" (Emphasis added.) 750 ILCS 60/305 (West 1992).

The language of section 305 plainly intends that officers are not to be held civilly liable for mere negligence in the good-faith performance of their duties under the Act. However, the express limitation on liability does not apply if the act or omission in question is a result of "willful or wanton misconduct." We believe that this partial immunity of law enforcement agents is a direct expression of legislative intent to reconcile the strongly worded purposes of the Act—primarily the protection of and assistance to victims of abuse—with the recognition that officers performing their legal duties should not be held civilly liable when their efforts to enforce the Act fall short, *unless* the conduct in question can be viewed as willful or wanton. Although the line between willful and wanton misconduct and simple negligence may be difficult to draw in some circumstances, it is hardly a new issue to the courts of this State. See *Ziarko v. Soo*

*Line R.R. Co.* (1994), 161 Ill. 2d 267, 275 (observing that willful and wanton conduct is a hybrid between negligence and intentionally tortious behavior); *cf. Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429 (noting qualitative distinction between willful and wanton acts committed intentionally and acts of simple negligence); see also Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993) (defining willful and wanton conduct as meaning a course of action "which, if not intentional, shows an utter indifference to or conscious disregard" for the safety of oneself or others).

In *Doe v. Calumet City* (1994), 161 Ill. 2d 374, we considered allegations of negligent and willful and wanton police misconduct. According to the complaint, police officers refused to break down a door to rescue two young children who were locked in their apartment with a man who had broken in, threatened to rape and kill their mother, and then locked the mother out of the apartment while he brutalized the children. The supervising officer on the scene explained that he did not wish to take responsibility for the property damage that might occur in breaking down the door. This officer physically restrained the mother and neighbors from trying to break in to save the minor girl, who was being repeatedly raped by the assailant, and the young boy, who was being choked and threatened. We held that the allegations of willful and wanton acts were sufficient to create a jury question with respect to the liability of the municipality and the supervising officer at the scene.

In the case at bar, potential governmental liability derives from the statutory scheme created by the Domestic Violence Act, which identifies a specially protected class of individuals to whom statutorily mandated duties are owed. These duties are expressed in section 304, which states that law enforcement officers having reason to know of the abuse "*shall* immediately use all

reasonable means to prevent further abuse," including the arrest of the abuser and physically transporting the victim to safety. (Emphasis added.) (750 ILCS 60/304 (West 1992).) Furthermore, the Act expressly contemplates the expansion of civil and criminal remedies for abuse victims (750 ILCS 60/102(6) (West 1992)), subject to the limitation of liability expressed in section 305 of the Act. These provisions reveal the General Assembly's intent to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse. The Act explicitly acknowledges the escalating nature of domestic violence and decries the failure of prior laws and enforcement efforts to effectively deal with family violence and to assist or protect victims of abuse. See 750 ILCS 60/102(1), (3) (West 1992).

To give effect to the legislature's purposes and intent in enacting the Domestic Violence Act, we believe judicial recognition of a right of action for civil damages is necessary, provided that the injured party can establish that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by the willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused plaintiff's injuries. Courts in other jurisdictions have recognized causes of action arising out of violations of their statutory domestic violence laws. See *Baker v. City of New York* (1966), 25 A.D.2d 770, 269 N.Y.S.2d 515 (special duty owed to holder of order of protection); *Jensen v. South Carolina Department of Social Services* (S.C. App. 1988), 377 S.E.2d 102 (duty arising under abuse statutes); see also *Coffman v. Wilson Police Department* (E.D. Pa. 1990), 739 F. Supp. 257 (inferring that Pennsylvania law would recognize a special relationship between law enforcement officers and injured holder of order of protection under State abuse laws).

In the instant case, plaintiff alleges that defendants knew she was a person in need of protection under the Act and were aware that an order of protection had been entered based on the acts of Michael Calloway, and that on the morning of the incident, defendants were advised and informed of all facts necessary to take immediate action against Michael Calloway, including his arrest. Calloway's violations of the order of protection continued over approximately $2^1/2$ hours before he abducted his wife at gunpoint. During the hours before the kidnapping, Calloway telephoned plaintiff at her place of employment and threatened harmful and violent conduct, which potentially endangered her, the minor child, and plaintiff's father. Although the sheriff's dispatcher conveyed plaintiff's pleas for help and the sheriff actually drove to Calloway's home, the sheriff allegedly did nothing except briefly observe the house before driving off. Documents in the record indicate that the sheriff saw Calloway's vehicle in the driveway but decided "not to wake up anyone" in the home at that hour. The sheriff did not attempt to speak to Calloway, investigate the situation further, arrest Calloway for violating the order of protection, or otherwise take reasonable steps to prevent further abuse and harassment. Instead, plaintiff was advised by the sheriff's office to call her lawyer. Michael Calloway's abusive and harassing conduct escalated when he freely entered plaintiff's place of employment, a public restaurant, and kidnapped her, forcing her at gunpoint to drive away with him. Only after plaintiff's abduction did law enforcement officials pursue Calloway's vehicle and erect a road block.

Under the law, the well-pleaded allegations of a complaint are considered true for purposes of a motion to dismiss and all reasonable inferences from those facts must be drawn in favor of the plaintiff. (*E.g.*, *Doe*, 161 Ill. 2d at 384.) In the case at bar, defendants were

informed that Calloway had a gun and was making threats to plaintiff, but did nothing to enforce the order of protection or to intervene after being informed of Calloway's continuing abuse. The Act imposed a duty upon defendants to promptly undertake all reasonable steps to assist plaintiff, a "person protected" by the Act, when they learned of Calloway's threatening conduct and ongoing violation of the order of protection. Whether defendants breached this legal duty by willful and wanton misconduct that proximately caused plaintiff's injury is a question of fact for the jury to determine at trial. Although each situation will differ, we believe that plaintiff has sufficiently pleaded a claim under the Act. Accordingly, we affirm the appellate court's reinstatement of those counts in plaintiff's complaint sounding in willful and wanton misconduct.

We also affirm dismissal of the two counts of the complaint sounding in negligence. Because the standard by which the breach of the statutory duty is to be judged is whether the officer's conduct is willful or wanton, rather than merely negligent, the counts of plaintiff's complaint alleging negligent violations of the Act are necessarily precluded. The foregoing analysis of the statutory language and intent of section 305 of the Act supports the conclusion that the legislature unambiguously intended to limit the liability of law enforcement personnel to willful and wanton acts or omissions in enforcing the Act.

We acknowledge that defendants based their motion to dismiss the entire complaint on the ground that defendants were insulated from liability by the public duty doctrine, a common law immunity based on public policy. This doctrine of immunity applies to municipalities and police officers whose negligent performance of law enforcement duties may cause personal injuries. (See, *e.g.*, *Leone v. City of Chicago* (1993), 156 Ill. 2d 33;

*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501.) Defendants argued that plaintiff's cause of action was barred because her complaint did not satisfy the requisites of the special duty doctrine, which functions as an exception to the common law immunity (*e.g., Huey v. Town of Cicero* (1968), 41 Ill. 2d 361). We do not reach defendants' arguments concerning general principles of governmental tort immunity because the Domestic Violence Act itself provides an express limitation of liability on the part of law enforcement officers and municipalities. Accordingly, we need look no further than the language and intent of the Act to ascertain whether and to what extent law enforcement officers in the performance of their statutory duties under the Act are immune from liability to plaintiffs injured by acts or omissions of such officers. Moreover, to the extent that defendants are asking this court to make the special duty doctrine part of plaintiff's burden of pleading a cause of action under the Domestic Violence Act, we note that nothing in the statutory language supports the implication of such a pleading requirement. The Domestic Violence Act confers a statutory duty upon municipalities and law enforcement officers, and such duty is owed to plaintiff as a person in need of protection under the Act. To recover damages arising out of breach of the duty, however, the plaintiff must establish that the conduct in issue was willful and wanton. In the instant case, plaintiff has pleaded viable causes of action in willful and wanton misconduct, but the negligence counts based on the violation of the same statutory duty are barred. Because plaintiff never pleaded or relied on the special duty doctrine as her basis for recovery, and because the complaint is premised on the provisions of the Domestic Violence Act, defendants' contention that plaintiff failed to come within the special duty exception to the public duty immunity is

legally irrelevant. We hold that the Act itself bars recognition of a cause of action sounding in ordinary negligence.

Moreover, in *Doe v. Calumet City* (1994), 161 Ill. 2d 374, we expressly noted that in cases involving allegations of willful and wanton misconduct, the special duty doctrine has no application. Like the willful and wanton provision of the Illinois Domestic Violence Act, the Tort Immunity Act by its own terms excludes willful and wanton conduct from its scope of immunity. Under the precedent of this court, plaintiff is not required to plead and prove the special duty exception to either the statutory immunities found in the Tort Immunity Act or the common law immunity known as the public duty doctrine. (See *Leone*, 156 Ill. 2d at 39; *Doe*, 161 Ill. 2d at 389 (observing that the "judicially created special duty exception and the statutory willful and wanton exception [are] separate and distinct exceptions to municipal and officer liability").) Our precedent has therefore established that an actionable theory against municipalities for conduct of law enforcement agents can be stated (1) where the elements of the special duty doctrine are satisfied and the negligent breach of this special duty proximately caused plaintiff's injuries; or (2) where the alleged conduct of the officers is willful and wanton and proximately caused plaintiff's injury and the applicable statute allows recovery in those instances. See *Doe*, 161 Ill. 2d at 389.

Defendants also contend, for the first time on appeal, that the special duty doctrine is an unconstitutional infringement on the power of the legislature to define the scope of governmental immunity. Defendants reason that imposition of a special duty on municipalities and their employees contravenes the provisions of the Tort Immunity Act by permitting plaintiffs to sue governmental officials in simple negligence, whereas the

Tort Immunity Act contemplates governmental liability only for willful and wanton conduct. Because the Illinois Constitution of 1970 conferred sole authority on the legislature to determine whether and to what extent a municipality and its agents will be deemed immune from liability, defendants argue that continued judicial recognition of the special duty doctrine violates our constitution.

Plaintiff does not address this argument in her brief because she contends that defendants waived the issue. She notes that defendants raise the constitutional issue for the first time in their appeal before this court. In the circuit court defendants relied on the immunity conferred by the common law public duty doctrine and argued that plaintiff's failure to establish that she came within the special duty exception rendered her complaint fatally defective. In the appellate court defendants reiterated their legal arguments raised in the motion to dismiss, but did not challenge the constitutionality of the special duty doctrine.

We do not consider it an appropriate use of our supervisory authority to decide defendants' constitutional challenge, an issue which is unnecessary to our disposition of the instant case. Moreover, as the constitutional argument was not raised in or decided by the circuit or appellate courts, we lack the benefit of a thoroughly researched and analyzed presentation of both sides of the issue. As this court held in *Doe*, when willful and wanton conduct is the measure of police officers' liability, the special duty doctrine has no application. In the case at bar, plaintiff did not assert a common law theory of negligence, plead the elements of the special duty doctrine, or request this court to apply such exception to the common law doctrine of governmental immunity. Therefore, defendants' attempt to persuade this court to declare the special duty doctrine unconsti-

tutional is not a proper subject for our review in this case. Were we to use the instant appeal as a vehicle for holding the special duty doctrine unconstitutional we would be overruling a long line of precedent without a clear rationale or present need for such action. The specific factual circumstances of each case will determine whether a plaintiff is owed a duty by law enforcement officials, the standard of care by which the officers' conduct is to be measured, and whether and to what extent immunities are available.

We hold that plaintiff has adequately pleaded a cause of action in willful and wanton misconduct against both defendants pursuant to the Domestic Violence Act. We further hold that the limitation of liability found in the Act renders the counts of the complaint alleging negligent violations of the Act unactionable, and, therefore, the negligence counts of the complaint were properly dismissed.

The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE FREEMAN, specially concurring:

With this case has gone another chance to acknowledge that the common law special duty exception is a legal dead letter. Were there doubt about the exception's nonviability—and the court not complicit in its recognition as a means of skirting statutory immunities—reason might arguably exist to ignore the fact. But the exception, operating as it had at common law, did not survive the constitutional abolishment of sovereign immunity. The failure to see that has resulted, unfortunately, in the muddled jurisprudence that is, today, the law of municipal liability in Illinois.

Far from being "legally irrelevant" here (see 168 Ill. 2d at 327-28), the special duty exception would be the only means by which the negligence Calloway alleged could be actionable. As the negligence counts she alleged must

be addressed, the exception's viability must be considered.

In the end, I agree in the judgment today affirming the dismissal of those counts. But, as I explain, I do so for reasons entirely different from the majority's. I otherwise join in the rest of today's decision that Calloway has alleged an action for willful conduct against Effingham County and Kinkelaar as its sheriff under the Domestic Violence Act.

Why the Special Duty Exception Must Be Considered

The nature of the motion by which Calloway's complaint was dismissed bears directly upon the special duty exception being at issue. In lieu of answering the allegations of negligent and willful conduct made against them, Effingham County and Kinkelaar moved for a section 2—619(a)(9) dismissal. The "affirmative matter" asserted to "avoid[ ] *** or defeat[ ]" Calloway's claims (see 735 ILCS 5/2—619(a)(9) (West 1992)) were principles of common law and statutory governmental immunity.

Governmental tort immunity has been recognized to be "affirmative matter" upon which a section 2—619(a)(9) motion may be grounded. (See *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 970-71.) But a section 2—619 motion is a fact, not a pleading, motion (see 4 R. Michael, Illinois Practice § 41.8 (1989)), despite occasional suggestion to the contrary (see, *e.g.*, 168 Ill. 2d at 318, 325-26). Though appropriate when an immunity defense calls for facts to show that conduct was within the scope of governmental authority, the motion's use to assert the mere "fact" of governmental status, as Effingham County and Kinkelaar did, is problematic. The main reason is that such use undermines operation of the burdens that section 2—619(a)(9) normally imposes (see 4 R. Michael, Illinois Practice § 41.8 (1989) (explaining that the burdens make the motion not unlike one for summary judgment)).

It is possible, though tortured, to say that Effingham County and Kinkelaar's burden under the motion—raising the issue of governmentalness—was satisfied without need for affidavit or other proof, Calloway having alleged it in her complaint. (See, *e.g.*, *Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 116.) But it makes no sense to speak of what would be Calloway's resulting burden to satisfy to avoid dismissal. Calloway could not have presented "proof denying the facts alleged or establishing facts obviating the grounds of defect." (See 735 ILCS 5/2—619(c) (West 1992).) The motion raised but a legal challenge to negate liability, grounds better suited to a section 2—615 pleading-based motion (735 ILCS 5/2—615 (West 1992)). See 4 R. Michael, Illinois Practice § 41.8, at 333 n.24 (1989) (criticizing use of section 2—619(a)(9) motions in such situations).

That points to what issues must be addressed to properly dispose of this appeal. Granting the section 2—619(a)(9) motion, of course, meant that Calloway's complaint should be dismissed. (See 4 R. Michael, Illinois Practice § 41.9 (1989).) Because no evidentiary hearing was needed to determine the motion, the issue here would be the same as if a summary judgment had been granted. (*Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116.) Notwithstanding that a section 2—615 motion would have been better suited to the particular challenge that Effingham County and Kinkelaar raised, there being no issue of fact, the question on appeal is otherwise the same: whether Calloway's suit should have been dismissed on grounds that, as a matter of law, Effingham County and Kinkelaar were immune from liability because they were governmental entities.

All four counts of the complaint must be assessed, as the review is *de novo*. (*Cf. Leone v. City of Chicago* (1993),

156 Ill. 2d 33, 38 (declining to consider the constitutionality of the special duty exception because it represented a different theory from that upon which the case had been tried to a finder of fact).) Pertinent to whether the issue of the special duty exception is at issue are the negligence actions Calloway stated in counts II and IV.

The reason that the court declines to address the special duty exception begins and ends with the observation that those counts, like counts I and III, sought recovery under the Domestic Violence Act, which precludes liability for negligence. (See 168 Ill. 2d at 326-28.) The observation is indisputable. It does not, however, mean that the special duty exception is not an issue.

The special duty exception has been held by this court—wrongly, as it turns out—to operate as an exception to statutorily conferred governmental immunity from negligence. (*Leone,* 156 Ill. 2d at 38 (stating that "what the special duty doctrine is an exception to is the rule that municipalities are immune from liability for injuries *negligently* caused by police officers *** while performing their official duties" (emphasis in original)).) That would mean that, although Calloway improperly claimed that the allegedly negligent acts afforded recovery under the Domestic Violence Act, counts II and IV were only defectively pled. It would be wrong, as this court has recently stated, "to affirm *** dismissal of [a] complaint with prejudice on the basis of a correctable pleading defect not raised in the trial court where it was likely that [the] plaintiff[ ] would have been granted leave to amend *** if the pleading defect had been found below." (*Geaslen v. Berkson, Gorov & Levin, Ltd.* (1993), 155 Ill. 2d 223, 230; see *Doe v. Calumet City* (1994), 161 Ill. 2d 374, 388.) The special duty exception is at issue because this court has held it could allow for recovery under the acts and omissions Calloway alleged

(see *Doe,* 161 Ill. 2d at 380) despite that the Domestic Violence Act precludes liability for negligence. It is therefore unnecessary to make a case for the use of supervisory authority (see 168 Ill. 2d at 329) to reach the issue, though it would hardly be difficult.

The Origin of the Special Duty Exception

The basis of the common law immunity asserted by Effingham County and Kinkelaar was the so-called public duty doctrine. The doctrine, rooted in the earliest notions of sovereign immunity (see *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 506-07; 63 C.J.S. *Municipal Corporations* § 747 (1950); see also 18 McQuillin on Municipal Corporations § 53.04.25, at 165, 167 (3d ed. 1993)) has been justified for the following reason, though others have been noted (see 18 McQuillin on Municipal Corporations § 53.04.25, at 165-66 (3d ed. 1993)):

> "[T]he duty of the municipality is owed to the public, and though the neglect causing the injury may prove of damage to the individual affected, the benefit of the discharge of such function to the public generally is deemed an outweighing consideration and so justifies immunity to the municipality." *Gebhardt v. Village of LaGrange Park* (1933), 354 Ill. 234, 237-38.

Historically, courts came to see, in the undermining of that particular reason, cause not to honor the public duty doctrine's promise of immunity. (See 18 McQuillin on Municipal Corporations § 53.04.25, at 166 (3d ed. 1993); see generally 63 C.J.S. *Municipal Corporations* § 747 (1950).) That is, the undertaking of a "special duty to a particular individual" gave cause for governmental tort liability. (See, *e.g., Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363 (stating that the protection of a material witness from threatened injury by third parties created such a "special duty").) And so was born the special duty exception, or, as it is called in some applications, the special relationship exception. See 18 McQuillin on

Municipal Corporations § 53.04.25, at 166 (3d ed. 1993) (stating that the special duty exception "is an exception to the public duty doctrine"); see also *Burdinie*, 139 Ill. 2d at 508.

The last point is critical, for the continued, wrong application of the special duty exception today to avoid statutory immunities owes to the failure to see from where it sprang.

Putting it differently, the special duty exception is a judicially created exception to the judicially created rule of the public duty doctrine under which municipalities could not be liable in tort. The exception simply reflects the notion that, logically, a rule should not apply where the reason for it is absent. So, at common law, while the public duty doctrine protected governmental entities from tort liability in the exercise of customary duties toward the public at large, the special duty exception properly applied to avoid that protection when there was a departure from that customary conduct. (*Burdinie*, 139 Ill. 2d at 508, 509.) In *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, our appellate court devised a four-part test, about which there is more to be said later, which has since been universally applied to measure the departure for purposes of applying the special duty exception. See *Burdinie*, 139 Ill. 2d at 508; *Leone*, 156 Ill. 2d at 37.

The Effect of Abolishment of Sovereign Immunity

This court's 1959 decision in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, spelled the end of common law sovereign immunity. (See *Aikens v. Morris* (1991), 145 Ill. 2d 273, 277-78; see generally D. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981.) In the wake of *Molitor*, the General Assembly passed, in 1965, the Local Governmental and Governmental Employees Tort Im-

munity Act (745 ILCS 10/1—101 *et seq.* (West 1992); *Burdinie*, 139 Ill. 2d at 506). The Tort Immunity Act embraced—importantly—the rule that local governmental entities could be liable in tort (*Burdinie*, 139 Ill. 2d at 508), for it "grants only immunities and defenses" (745 ILCS 10/1—101.1 (West 1992)). The Act did, however, preserve extensive immunities for local governments, including, as would be relevant in this case, immunity for negligence in law enforcement efforts. 745 ILCS 10/2—202 (West 1992).

The public duty doctrine and its special duty exception could happily coexist as viable legal concepts with the Tort Immunity Act during the first five years of the statute's effect. Nothing prohibited the judiciary from applying principles of common law governmental liability or immunity in deciding a case where the Act's provisions did not apply. See generally *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363.

The 1970 Constitution changed all that. Article XIII, section 4, abolished all forms of governmental immunity except as provided for by the General Assembly. (Ill. Const. 1970, art. XIII, § 4; see ILCS Ann., Ill. Const. 1970, art. XIII, § 4, Constitutional Commentary, at 828-29 (Smith-Hurd 1993) (noting that the Constitution of 1870, in contrast, had abolished immunity for the State but not its units of local government); see also *Burdinie*, 139 Ill. 2d at 506-07.) The judiciary's power to apply the public duty doctrine ceased to exist.

Its foundation gone, the special duty exception—the means of avoiding governmental immunity—could no longer operate in the manner it had previously. The 1970 Constitution had ushered out common law governmental tort immunity in favor of acknowledging the potential for liability. The rule of governmental tort liability could be avoided only by express grant of statutory immunity. Given the rule of governmental tort li-

ability, the special duty exception could only offer a means of avoiding a statutory immunity—specifically one under the already existing Tort Immunity Act. But such a judicially created exception would be at odds with the constitutional scheme created by article XIII, section 4. In that scheme, Illinois courts, including this one, were limited to viewing issues of governmental tort liability—not just immunity—through the prism of existing legislation. See generally *Henderson v. Foster* (1974), 59 Ill. 2d 343, 349.

To explain, the Tort Immunity Act then existed as the source for determining when a governmental entity could not be liable in tort. Where no statutory provision was created to grant immunity, or where a statutory provision could be not be interpreted to do so, the potential for governmental tort liability existed. (See *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 412-13.) Again, the Tort Immunity Act, by "delineat-[ing] immunities," "articulate[d]" the scope of governmental responsibility actionable in tort. (*Vesey*, 145 Ill. 2d at 412.) And so, again, continued judicial recognition of the special duty exception as a means, unto itself, to separately base governmental tort liability was wrong.

That does not mean that the *principle* underlying the special duty exception was, for all purposes, made invalid. Article XIII, section 4, calls for governmental liability where the General Assembly provides no immunity. Absent a statutory immunity, governmental entities are potentially liable for negligence. Every negligence claim requires the existence of a legal duty. Within the context of deciding duty in a negligence action—again, only absent a statutory immunity—courts are free to look to the reason for the special duty exception; namely, whether the conduct involved was not of the kind customarily directed to the public at large. Our appellate court correctly recognized the point in *Han-*

*non v. Counihan,* a case decided in 1977. (See *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 512-13, citing *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, and *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348.) But—and it bears repeating, for it must be made clear—after 1970, the special duty exception could not continue to operate as it had up to that time to skirt governmental immunities. In simple terms, the constitutional uprooting of the public duty doctrine caused the special duty exception, nothing but a response to it, to wither on the vine.

The judiciary's continued recognition of the exception after 1970 as an exception to statutory immunities created under the exclusive grant of power to the General Assembly presents a constitutional conflict. In twice acknowledging the conflict (see *Leone,* 156 Ill. 2d at 38; *Burdinie,* 139 Ill. 2d at 506-07), and four times not (see *Doe,* 161 Ill. 2d at 385-86; *Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 534; *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 241-43; *Stigler,* 48 Ill. 2d at 24), this court has, regrettably, exacerbated the problem.

The court actually resolved the conflict in *Burdinie.* (*Burdinie,* 139 Ill. 2d at 506-07, 510-11.) There, the court acknowledged that, under article XIII, section 4, "the tort liability of a municipality" was "expressly controlled" by what the General Assembly chose to provide by law. (*Burdinie,* 139 Ill. 2d at 507.) Municipal tort liability—not merely immunity—was a matter of constitutional mandate and legislative grace. (*Burdinie,* 139 Ill. 2d at 507.) The court therefore held "that the language of the Tort Immunity Act should control" all municipal tort liability claims. (*Burdinie,* 139 Ill. 2d at 510-16.) The conclusion that the Act precluded the claim there alleged, for injuries sustained in a public swimming pool, wholly disposed of the case. *Burdinie,* 139 Ill. 2d at 511-16.

But, in analyzing an alternative argument that the complaint could be read to satisfy the special duty exception (*Burdinie*, 139 Ill. 2d at 517-27), the resolution appeared to be left uncertain. (See *Burdinie*, 139 Ill. 2d at 527-28 (Miller, J., specially concurring).) Without commenting on the legitimacy of the practice, the court noted that the appellate court had "[t]raditionally" used the four-part special duty test of *Bell*, "discuss[ing]" it even after ratification of the 1970 Constitution. *Burdinie*, 139 Ill. 2d at 508, 511.

Though the special duty exception as it operated prior to 1970 was indeed recognized in cases after the existence of article XIII, section 4, it was then, as it is now, without valid legal grounds. The test that the appellate court created in *Bell* for deciding when the exception should apply was therefore, too, invalid when it was formulated in 1980, a decade after the constitution's ratification.

For the test's first three elements, the appellate court had relied upon cases decided prior to the 1970 Constitution and the resulting effect of the abolishment of sovereign immunity. (See *Bell*, 90 Ill. App. 3d at 970, citing *Huey*, 41 Ill. 2d 361, and *Keane v. City of Chicago* (1968), 98 Ill. App. 2d 460.) The appellate court overlooked that the cases had to be read in their historical context. Constitutionally speaking, the decisions could offer no support for an exception to statutory immunities. *Bell* and every case which can be traced today back to it for the point that the special duty exception could operate as it had prior to 1970 should be overruled.[1]

---

[1]*Hendricks v. Champaign-Urbana Mass Transit District* (1995), 276 Ill. App. 3d 230; *Towner v. Board of Education* (1995), 275 Ill. App. 3d 1024; *Millerick v. Village of Tinley Park* (1995), 272 Ill. App. 3d 738; *Geimer v. Chicago Park District* (1995), 272 Ill. App. 3d 629; *Thames v. Board of Education* (1995), 269 Ill.

# The Present State of Affairs
This court has struggled with the special duty exception's operation in the modern era of exclusive

App. 3d 210; *Payne v. Lake Forest Community High School District 115* (1994), 268 Ill. App. 3d 783; *Williams v. Chicago Board of Education* (1994), 267 Ill. App. 3d 446; *Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925; *Fraley v. City of Elgin* (1993), 251 Ill. App. 3d 72; *Packard v. Rockford Professional Baseball Club* (1993), 244 Ill. App. 3d 643; *Jones v. Village of Willow Springs* (1992), 240 Ill. App. 3d 235; *Gordon v. County of Jackson* (1992), 231 Ill. App. 3d 1017; *Platacis v. Village of Streamwood* (1991), 224 Ill. App. 3d 336; *Schnering v. Midlothian Park District* (1991), 219 Ill. App. 3d 664; *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612; *Byrne v. City of Chicago* (1991), 215 Ill. App. 3d 698; *McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982; *Goebig v. City of Chicago* (1989), 188 Ill. App. 3d 614; *Trepachko v. Village of Westhaven* (1989), 184 Ill. App. 3d 241; *Arnold v. Village of Chicago Ridge* (1989), 181 Ill. App. 3d 778; *Poliny v. Soto* (1988), 178 Ill. App. 3d 203; *Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270; *Vasconcelles v. Village of Springfield* (1988), 170 Ill. App. 3d 404; *Anthony v. City of Chicago* (1988), 168 Ill. App. 3d 733; *Rush v. City of Chicago* (1987), 163 Ill. App. 3d 725; *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213; *Fessler v. Tillery* (1987), 161 Ill. App. 3d 290; *Jackson v. Chicago Firefighters Union, Local No. 2* (1987), 160 Ill. App. 3d 975; *Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999; *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498; *Hernandez v. Village of Cicero* (1986), 151 Ill. App. 3d 170; *Luber v. City of Highland* (1986), 151 Ill. App. 3d 758; *Bates v. Doria* (1986), 150 Ill. App. 3d 1025; *Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809; *Tannenbaum v. Lincoln National Bank* (1986), 143 Ill. App. 3d 572; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266; *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732; *Fryman v. JMK/ Skewer, Inc.* (1985), 137 Ill. App. 3d 611; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059; *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405; *Nieder v. Gacy* (1984), 121 Ill. App. 3d 854; *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172; *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400.

statutory governmental immunity. (See *Leone*, 156 Ill. 2d at 41-42 (Miller, C.J., dissenting) (acknowledging the "complex relationship between the Tort Immunity Act and the special duty exception").) In *Leone*, and more recently in *Doe*, the court presumed that the exception—as it operated prior to 1970 and not, as explained above, in a manner in which its underlying rationale could apply today in a negligence action—and the Tort Immunity Act were reconcilable. (*Leone*, 156 Ill. 2d at 38-39; *Doe*, 161 Ill. 2d at 385-86.) That served only to underscore the problem in the exception's continued recognition; no consensus could be reached as to what the special duty exception was exactly an exception to. (See *Leone*, 156 Ill. 2d at 38-39 (stating that the exception avoided immunities of the Tort Immunity Act); *Leone*, 156 Ill. 2d at 46-48 (Bilandic, J., dissenting) (stating that the exception merely permitted an individual to sue a municipality, it did not negate statutory immunities).) In retrospect, for its efforts the court has made matters worse. Failing to see the nonviability of the special duty exception, the court has sanctioned a hairsplitting body of case law concerned with whether the *Bell* test—particularly the "control" element—is satisfied. See *Leone*, 156 Ill. 2d at 39 (interpreting the element regarding control to simply require a governmental hand in creating a dangerous situation); see *Doe*, 161 Ill. 2d at 386-87 (distinguishing the facts of *Leone*).

## Conclusion

Time has long since passed for declaring that the special duty exception arose because of, and its fate was tied to, the common law public duty doctrine. Late or not, in that plain acknowledgment is, I have come to see, the last hope of righting 25 years of confusion regarding governmental tort liability and immunity in Illinois.

When sovereign immunity was abolished constitutionally in 1970, the public duty doctrine ceased to exist. So did the special duty exception which rode its coattails. Then and today, governmental tort liability and immunity are matters to be determined, ultimately, against what legislation the General Assembly does and does not provide. The special duty exception remains, in the form of its underlying principle, a valid policy factor to be weighed in determining the existence of a legal duty in a negligence action not precluded by a statutory immunity. But the exception as it operated prior to 1970 does not otherwise exist as means of its own to separately impose governmental tort liability.

As a result, counts II and IV of Calloway's complaint alleging negligence could not be cured to avoid immunities in either the Domestic Violence or Tort Immunity Acts. For that reason, and not those stated in the court's opinion, I would affirm the dismissal of those counts against Effingham County and Kinkelaar.

JUSTICE HEIPLE, dissenting:

Plaintiff Helen Calloway's husband, Michael Calloway, was abusive to her throughout their marriage. Eventually, plaintiff sought and was granted an order of protection, which the sheriff of Effingham County, Arthur Kinkelaar, served upon Michael Calloway on March 20, 1991. On April 4, 1991, Michael Calloway called plaintiff at her workplace, threatening to kill himself in front of plaintiff and their daughter if she did not come to the marital home to retrieve the child. Plaintiff reported the threatening calls to the Effingham County sheriff's department. The sheriff traveled to the marital residence and briefly observed the house. Plaintiff's daughter was not at the marital residence.

Subsequently, a dispatcher from the sheriff's department telephoned plaintiff to inquire about her and her daughter. Plaintiff informed her that her daughter was

safe, but that Michael Calloway was continuing his harassing phone calls. The sheriff's dispatcher telephoned plaintiff again, and told her that officers in the department were advising plaintiff to call her attorney and ask him what should be done. Ten minutes later, Michael Calloway entered the restaurant where plaintiff was working and abducted her at gunpoint. Plaintiff drove Michael Calloway's pickup truck. A law enforcement officer identified and followed the truck. Pursuant to orders, State troopers blocked the road in front of Michael Calloway's truck. Plaintiff jumped out of the truck and concealed herself behind one of the parked squad cars. Michael Calloway shot himself inside the truck.

Thereafter, plaintiff brought an action against the sheriff of Effingham County and the County of Effingham, seeking to recover damages for the extreme emotional distress and trauma and the appurtenant financial loss she suffered as a result of defendant's failure to comply with the Illinois Domestic Violence Act of 1986. Plaintiff's complaint alleged willful and wanton violation of statutory duties under the Act and negligent violations of the Act.

The trial court dismissed the action in its entirety, concluding that plaintiff failed to state a cause of action. The appellate court reversed in part, reinstating the counts alleging willful and wanton violations of the Act. The majority herein affirms the appellate court. In so ruling, the majority first concludes that the Act does permit a cause of action in favor of those whose injuries are caused by police officers' willful and wanton misconduct in failing to comply with the Act. Second, the majority concludes that plaintiff's complaint is sufficient to state a cause of action for willful and wanton misconduct. While I agree that a plaintiff may bring an action for willful and wanton misconduct under the Act, I cannot agree that plaintiff's complaint successfully alleges

willful and wanton misconduct as a matter of law. Accordingly, I respectfully dissent.

The plaintiff's complaint alleges that, after being notified of Michael Calloway's threatening phone calls to plaintiff in violation of the order of protection, the sheriff "drove by Michael Calloway's residence, briefly observed the residence from his squad car, and left without further investigation." Moreover, after plaintiff informed the Effingham County sheriff's department dispatcher that her daughter was safe, the dispatcher called plaintiff and "advised [her] that officers with the Sheriff's department had advised that Plaintiff should call her attorney and seek advice as to what should be done." The complaint also sets forth a list of what plaintiff contends defendants should have done under the Act but did not do: defendants "failed to provide or arrange transportation for Plaintiff to a place of safety"; "failed to arrest Michael Calloway"; "failed to disarm Michael Calloway"; and "failed to use all reasonable means to protect against further abuse and harassment."

To successfully allege willful and wanton misconduct, a plaintiff must do more than baldly assert that a defendant could have done better. Under the circumstances of the instant case, defendants' actions do not approach the realm of willful and wanton misconduct. Defendant Kinkelaar drove by Michael Calloway's home. Plaintiff's daughter was not there. Shortly thereafter, defendants ascertained by telephone that plaintiff's daughter was safe. Later, when it was determined that plaintiff was in actual and immediate danger, and was not merely being harassed with threatening phone calls, defendants at once hastened to rescue her, blocking Michael Calloway's pickup truck, and ultimately saving plaintiff from any injury. She, in fact, received no physical injury of any kind. Her complaint is grounded solely in emotional trauma.

Given these facts, the majority's suggestion that they are somehow analogous to those in *Doe v. Calumet City* (1994), 161 Ill. 2d 374, is wrong. There is no similarity between this case and *Doe*. In *Doe*, not only did the police officers refuse to break down a door to rescue two young children who were being raped and brutalized by a home invader, they restrained the children's mother and neighbors who attempted to rescue the children. That is willful and wanton misconduct.

Given its most generous interpretation, plaintiff's complaint, at best, states a cause of action sounding in mere negligence. Although it may be argued that defendants negligently breached a duty of care they owed to plaintiff as a result of the affirmative obligations set forth in the Domestic Violence Act, the legislature expressly limited causes of action arising under the Act to acts which are a result of willful and wanton misconduct. 750 ILCS 60/305 (West 1992).

In its effort to "liberally construe" the provisions of the Domestic Violence Act, the majority fails to come to terms with the qualitative difference between negligence and willful and wanton misconduct. Instead, it reasons that the line between willful and wanton misconduct and simple negligence may be "difficult to draw in some circumstances." (168 Ill. 2d at 322.) Relying on this court's unfortunate decision in *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, and its assertion that willful and wanton conduct is a "hybrid" between negligence and intentionally tortious behavior, the majority seizes the opportunity to further blur and even obliterate the distinction between willful and wanton misconduct and negligence. The majority leaves us with the conclusion that speculative allegations of negligence are sufficient to land a complaint somewhere within the majority's negligent/willful and wanton/intentional conduct spectrum. It thereafter becomes a question of fact for the

jury as to whether defendants' willful and wanton misconduct proximately caused plaintiff's injuries.

The majority's understanding of willful and wanton misconduct cannot be reconciled with the legislature's understanding of the concept, as evidenced by the plain language of the Tort Immunity Act:

> " 'Willful and wanton conduct' *** means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).)

It is this definition of willful and wanton conduct, and not the less stringent *Ziarko* version, which the legislature intended courts to use in reviewing allegations of misconduct brought under the Domestic Violence Act. The actions of the police officers as alleged in the complaint simply do not rise to an "utter indifference or conscious disregard for the safety" of the plaintiff. Police officers investigated her claim; they checked on her condition by telephoning her; and they ultimately rescued her. That they should have possibly done more under the Act is not sufficient to state a claim for willful and wanton misconduct.

In Cook County alone, there were 21,679 orders of protection entered in 1994. (Illinois State Police Division of Administration Information Services Bureau, *Entered Orders of Protections on Leads*, at 15 (1994).) Extraordinary resources will have to be expended if police officers are now required, under the threat of tort liability, to arrest each person who is allegedly in violation of an order of protection or to provide or arrange transportation for the protected individual to a place of safety. I do not minimize the very real problem of domestic violence or the underlying purpose of the Domestic Violence Act. However, given the sheer number of entered orders of protection as well as the limits of already overburdened law enforcement agencies, it was

understandable why the legislature chose to limit recovery under the Act to damages resulting from willful and wanton conduct.

With this decision, not only does the majority effectively abolish any distinction between negligence and willful and wanton conduct which may have existed after *Ziarko*, it abrogates the legislature's definition of willful and wanton misconduct. I cannot join in this departure from common sense and legislative intent. The decision of the trial court, dismissing the action in its entirety, should be affirmed.

CHIEF JUSTICE BILANDIC joins in this dissent.